UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES PAULI,

                              **Plaintiff,**

  vs.                                                        5:22-cv-00279
                                                                  (MAD/ML)

**OLLIE'S BARGAIN OUTLET, INC.,**

                              **Defendant.**
_____

**APPEARANCES:**                                             **OF COUNSEL:**

**GATTUSO & CIOTOLI, PLLC**                       **FRANK S. GATTUSO, ESQ.**
The White House
7030 East Genesee Street
Fayetteville, New York 13066
Attorneys for Plaintiff

**VIRGINIA & AMBINDER, LLP**                       **JAMES E. MURPHY, ESQ.**
40 Broad Street, 7th Floor                            **MICHELE A. MORENO, ESQ.**
New York, New York 10004
Attorneys for Plaintiff

**FISHER & PHILLIPS**                                   **KATHLEEN MCLEOD CAMINITI, ESQ.**
430 Mountain Avenue
Suite 303
Murray Hill, New Jersey 07974
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.   INTRODUCTION

      On March 22, 2022, Plaintiff James Pauli commenced this collective and class action against Defendant Ollie's Bargain Outlet, Inc. *See* Dkt. No. 1. Plaintiff's collective action asserts violations of the Fair Labor Standards Act ("FLSA"), *see* 29 U.S.C. § 201, and his class action claims violations of New York Labor Law ("NYLL"), Art. 19 Section §§ 650, 191(1), 195(1),

1

195(3).  *See* Dkt. No. 1.  Specifically, Plaintiff claims Defendant misclassified Plaintiff and similarly-situated "Co-Team Leaders" employees as exempt employees, resulting in deprivation of overtime compensation.  *See id.* at ¶ 1.

On June 27, 2022, Defendant filed an answer denying allegations of unlawful conduct. *See* Dkt. No. 13 at ¶ 1.  On July 21, 2022, Magistrate Judge Miroslav Lovric presided over a Rule 16 Initial Conference.  *See* Dkt. No. 16.  On August 11, 2022, Defendant moved to change venue from the Northern District of New York to the Middle District of Pennsylvania.  *See* 28 U.S.C. § 1404(a); Dkt. No. 17.  On September 1, 2022, Plaintiff filed a cross motion for an order of equitable tolling of the FLSA claims for members of the proposed putative collective action.  *See* Dkt. No. 18.  The action neither been granted a conditional certification nor a Rule 23 class certification at this time.

## II.  BACKGROUND

Defendant is a company headquartered in Harrisburg, Pennsylvania, operating over 400 stores across twenty-nine states.  *See* Dkt. No. 1 at ¶ 11.  About forty-nine of those stores are in Pennsylvania and about twenty-eight stores are in New York.  *See* Dkt. No. 17-1 at 7 (citing Dkt. No. 17-3 at ¶ 5).  Plaintiff is a New York State resident who has been employed at Defendant's location in Cicero, New York as a "Co-Team Lead" for over eight years.  *See* Dkt. No. 1 at ¶ 8.

Plaintiff's collective action alleges Defendant violated the FLSA by misclassifying Co-Team Leaders as exempt rather than nonexempt employees in Defendant's stores across the nation.  *See* Dkt. No. 1 at ¶ 31.  Plaintiff alleges he and similarly-situated current and former Co-Team Leaders are "(i) entitled to unpaid wages from Defendant for overtime work for which they did not receive overtime premium pay … and (ii) entitled to liquidated damages."  *Id.* at ¶ 34 (citing 29 U.S.C. § 201).  Plaintiff defines the proposed collective class as "[a]ll current and

former Co-Team Leaders who have worked for Defendant from March 22, 2019 through the date of trial, and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b)." *Id.* at ¶ 33.

Plaintiff also seeks designation of a class action under Federal Rule of Civil Procedure ("FRCP") 23. *See* Dkt. No. 1 ¶¶ 39-49. Plaintiff alleges violations of NYLL including Defendant:

> (i) failing to pay [Team Co-Leaders] overtime at the rate of one and one-half times the employee's regular salary for all hours worked in excess of 40 hours in any given workweek; and (ii) failing to pay spread of hours pay for all work in excess of 10 hours in a single workday.

Dkt. No. 1 at ¶ 41. Plaintiff defines the proposed class as "[a]ll current and former Co-Team Leaders who have worked for Defendant in the State of New York from March 22, 2016 through the date of trial." *Id.* at ¶ 40.

Plaintiff alleges "Co-Team Leaders are misclassified as exempt and are not paid overtime." *Id.* at ¶ 20. Defendant classifies Co-Team Leads as exempt workers under the FLSA. *See* Dkt. No. 13 at ¶ 25. Defendant's "Customer Service Associates, Sales Associates, Sales Supervisors, Freight Flow Supervisors and Assistant Team Leaders are classified as non-exempt and paid overtime compensation." *Id.* at ¶ 20. Plaintiff alleges he did not receive overtime compensation, and "Defendant admits … that Plaintiff was an exempt employee and as such paid a salary." *Id.* at ¶ 24. Plaintiff alleges that the responsibilities of Co-Team Leaders and nonexempt employees "are virtually indistinguishable." Dkt. No. 1 at ¶ 32. Plaintiff alleges Co-Team Leaders spend the majority "of their time on tasks such as unloading supply trucks, unboxing products …, stocking shelves, operating cash registers, cleaning the store …, and helping customers." *Id.* at ¶ 28. Plaintiff alleges typically working five days per week, for more than ten hours per day. *See id.* at ¶¶ 22-23.

3

Defendant requests transfer of the case to the Middle District of Pennsylvania. *See* Dkt. No. 17. Defendant argues that the interests of justice and judicial efficiency, the convenience for witnesses, the role of the plaintiff's choice of forum in collective action cases, the ease of access to sources, the convenience of the parties, the locus of operative facts, the ability of process to compel the attendance of witnesses, and the proposed transfer forum's familiarity with governing law favor transfer. *See* Dkt. No. 17-1.

### III. DISCUSSION

**A.     Motion to Transfer Venue**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404. In deciding whether to utilize its discretion, a court looks to "(1) whether the action sought to be transferred is one that 'might have been brought' in the transferee court; and (2) whether, considering the 'convenience of the parties and witnesses,' and the interests of justice, a transfer is appropriate." *Burke v. Bimbo Bakeries, USA, Inc.*, 5:19-cv-902, 2020 WL 4597319, *2 (N.D.N.Y. May 14, 2020) (quoting *Litton v. Avomex, Inc.*, No. 08-cv-1340, 2010 WL 160121, *13 (N.D.N.Y. Jan. 14, 2010)). A court considers a variety of factors when analyzing the second prong. *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006). The moving party has the burden of proving a Section 1404(a) venue transfer meets these elements. *See Burke*, 2020 WL 4597319, at *2 (citation omitted); *Andres v. A.C. Roman & Associates*, 914 F. Supp. 2d 230, 241 (N.D.N.Y. 2012) (specifying there is a "heavy burden of demonstrating that transfer … is warranted").

### *1. Whether the Action "Might Have Been Brought"*

"To decide whether an action might have been brought in the proposed transferee forum, the court must first determine whether the defendants are subject to personal jurisdiction in that forum, and whether venue would properly lie there." *Burke*, 2020 WL 4597319, at *2 (quoting *United Rentals (North America) Inc. v. Conti Enterprises, Inc.*, No. 3:15-cv-298, 2015 WL 7257864, *7 (D. Conn. Nov. 17, 2015) (quotation omitted)). Defendant is subject to personal jurisdiction in the Middle District of Pennsylvania, as its headquarters are located there. Pursuant to 28 U.S.C. § 1391, venue lies, *inter alia*, in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). "For all venue purposes … an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question … " 28 U.S.C. § 1391(c)(2). Plaintiff concedes this prong as Defendant is headquartered in the Middle District of Pennsylvania. *See* Dkt. No. 18-3 at 10. The Court finds Plaintiff could have filed this action in the Middle District of Pennsylvania. Having decided this, the Court turns to the next prong.

### *2. Whether the Convenience of Parties and Witnesses and the Interests of Justice Make Transfer Appropriate*

In determining whether a transfer to the Middle District of Pennsylvania is appropriate, the Court considers the following factors:

> (1) the plaintiff's choice of forum, (2) the convenience of the witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*D.H. Blair & Co.*, 462 F.3d at 106-07 (citing *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002)). As there is no strict formula for the application of these factors, the Court balances these factors to determine whether transfer is warranted. *See, e.g.*, *Burke*, 2020 WL 4597319, at *5 (citing *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005*); see also Emplrs. Ins. v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008).

### *a. Plaintiff's Choice of Forum*

In FLSA collective actions, "courts have noted that the 'opt-in' structure of collective actions under § 216(b) of the FLSA strongly suggests that Congress intended to give plaintiffs considerable control over the bringing of a FLSA action." *Koslofsky v. Santaturs. Inc.*, No. 10-cv-9160, 2011 WL 10894856, *2 (S.D.N.Y. Aug. 18, 2011). Plaintiff chose to commence this FLSA collective action in the Northern District of New York, which weighs against transfer.

While a plaintiff's choice of forum in the class action context is less persuasive than in an individual action, "it is relevant [if] many of the class members reside in New York." *In re Bystolic Antitrust Litig.*, No. 20-cv-5735, 2021 WL 148747, *3 (S.D.N.Y. Jan. 15, 2021). Here, the proposed Rule 23 class action arises solely under New York law based on contacts within this district, in which Defendant has about twenty-eight stores. *See* Dkt. No. 1 at ¶ 10. The proposed class is "[a]ll current and former Co-Team Leaders who have worked for Defendant in the State of New York from March 22, 2016 through the date of trial," *Id.* at ¶ 40, and the named Plaintiff resides in the Northern District of New York. *See* Dkt. No. 18-3 at 2.

Based on these facts, Defendant's proffered analogous cases are misplaced. First, in *Farrior v. George Weston Bakeries Distribution, Inc.*, neither of the named plaintiffs resided in the transferor district and the defendant's headquarters was located in the transferee district, and

these facts contributed to the transfer of venue being proper. *Farrior v. George Weston Bakeries Distribution, Inc.*, No. 08-cv-2705, 2009 WL 113774, *4 (E.D.N.Y. Jan. 15, 2009). *Koster v. (Amrican) Lumbermens Mutual Casualty Company* was a derivative action where the defendants sought dismissal based on *forum non conveniens*. In that case too, "the plaintiff show[ed] not a single fact provable by record or witness within the district or state where he has brought suit." *Koster v. (Amrican) Lumbermens Mutual Casualty Company*, 330 U.S. 518, 526 (1947). The Court noted that "many kinds of cases may 'relate to internal affairs of a corporation', and that fact does not have the same significance as to the doctrine of forum non conveniens *i*n all settings." *Id.* Finally, in *Andrews v. A.C. Roman & Assocs., Inc.*, the court found a venue transfer appropriate where

> the employer's center of operation is in the Eastern District of New York; the Named Plaintiffs were hired and trained at this main office; the policies, practices, and decisions that are at the center of both the wage and discrimination claims emanated from this center of operation; wages were calculated and paid from the Eastern District of New York; a portion of the two Named Plaintiffs' work was performed outside the Northern District of New York; and the Named Plaintiffs' supervisors reported to and were overseen by personnel located in the Eastern District of New York.

*Andrews v. A.C. Roman & Assocs., Inc.*, 914 F. Supp. 2d 230, 237-38 (N.D.N.Y. 2012). In the instant case, the named Plaintiff resides in the Northern District of New York, and alleged facts occurred in this district. Accordingly, the Court finds Plaintiff's choice of forum weighs against transfer.

### b. Convenience of Witnesses

"The convenience of witnesses, both party and nonparty, is one of the most important factors in determining whether to transfer venue." *Burke*, 2020 WL 4597319, at *6 (citing *Litton*, 2010 WL 160121, at *14). However, listing potential witnesses and locations is not enough to

satisfy this factor. *See Litton*, 2010 WL 160121, at *14. Rather, "movants must provide detailed factual statements of 'potential principal witnesses expected to be called and a general statement of the substance of their testimony.'" *Burke*, 2020 WL 4597319, at *6 (quoting *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 987 (E.D.N.Y. 1991)).

Neither party has provided such "detailed factual statements," including names of those witnesses who would harmed should the case remain in this District. *See* Dkt. No. 17-3 at ¶ 8. Defendant identifies only that "Ollie's key human resources personnel, with knowledge regarding the classification of CTLs, live and work in the Middle District of Pennsylvania. Defendant's key witnesses regarding the development and implementation of its wage and hour policies are located in Pennsylvania." Dkt. No. 17-1 at 11-12 (citation omitted). Additionally, Defendant notes that "other potential witnesses, such as the direct supervisors and coworkers of each putative collective action member, will be spread throughout the 29 states in which Ollie's operates stores. But the difference between travelling to Albany, New York as opposed to Harrisburg, Pennsylvania would not appreciably impact the convenience of those witnesses." *Id.* (citation omitted). However, "Defendant does not provide the Court with the names or location of their employees or former employees, or with any evidence to suggest that these employees would be unwilling to testify or unable." *Bryant v. Potbelly Sandwich Works, LLC*, No. 17-cv-7638, 2018 WL 898230, *5-7 (S.D.N.Y. Feb. 5, 2018). As neither Plaintiff nor Defendant have provided specific names or details of witnesses inconvenienced, and a transfer would seem to shift inconveniences simply from one party to the other, this factor is neutral in determining whether transfer is warranted.

Defendant once again relies on *Farrior*, a case where none of the named plaintiffs, nor the corporation, resided or were headquartered in the transferor district. *Farrior v. George Weston*

*Bakeries Distrib.,* 2009 WL 113774, at *4; *see also* Dkt. No 17-1 at 15.  Defendant also relies on *Horanzy v. Vemma Nutrition Co.*, a solely *nationwide* putative *class action* which found transfer proper where not only policy decisions about product misrepresentations giving rise to the case were made at company headquarters in the transferee district, but also all of the product manufacturing, testing, and traditional retail outlets were outside of the transferor district and state.  *Horanzy v. Vemma Nutrition Co.*, 87 F. Supp. 3d 341, 344, 349 (N.D.N.Y. 2015); *see also* Dkt. No. 17-1 at 16.

    The Court finds this factor does not weigh in favor of transfer.

### c. Location of Sources of Proof

This factor is given little weight in the analysis because with the advent of modern technology, the physical location of proof is less of a barrier to gaining access to proof for litigation.  *See Burke*, 2020 WL 4597319, at *6 (citing *Litton*, 2010 WL 160121, at *16; *United Rentals (North America) Inc.*, No. 3:15-cv-298, 2015 WL 7257864, *9 (D. Conn. Nov. 17, 2015)).[1]  For example, Defendant states "payroll data" is located in Pennsylvania.  *See* Dkt. No. 17-3 at ¶ 16.  Such data is easily shared.  This factor is neutral in the Court's determination of whether transfer is warranted.

### d. Convenience of the Parties

"As to whether the convenience of the parties favors transfer, the Court first looks to the residence of the parties, and then ensures an order of transfer would not simply switch the burden of inconvenience from one party to another."  *See Burke*, 2020 WL 4597319, at *6 (citing *Hernandez*, 761 F. Supp. at 988).  "The parties' convenience becomes a neutral factor in the

---

[1] While some courts have found that in *nationwide class actions*, this factor weighed "marginally" in favor of transfer to headquarter districts, *Earley v. BJ's Wholesale Club, Inc.*, No. 06-CV-3529, 2007 WL 1624757, *3 (S.D.N.Y. June 4, 2007), this case is a potential state class action and

transfer analysis if transferring venue would merely shift the inconvenience to the other party." *Koslofsky v. Santaturs. Inc.*, No. 10-cv-9160, 2011 WL 10894856, *3 (S.D.N.Y. Aug. 18, 2011) (internal quotations and citations omitted).  Here, Plaintiff resides in the Northern District of New York.  Defendant is headquartered in Pennsylvania but operates over twenty-eight stores in New York.  Because a transfer here would simply switch the burden of inconvenience from Defendant to Plaintiff, this factor does not favor a transfer.

### *e. Locus of Operative Facts*

"Transfer is not precluded where the operative facts have some connection to the initial forum if the transferee district has a stronger connection with the operative facts raised in the pleadings." *Burke*, 2020 WL 4597319, at *17 (citing *View 360 Solutions, LLC*, 2013 WL 998379, at *5).  While "it is often difficult to fix a single locus of operative facts … courts have concluded that operative facts may be found at the locations where employees worked, notwithstanding allegations that a uniform corporate policy caused the FLSA violations." *Flood v. Carlson Restaurants Inc.*, 94 F. Supp. 3d 572, 579 (S.D.N.Y. 2015).  In putative class action "employment disputes," "the locus of operative facts is the location of the alleged violations … not the corporate headquarters."  *Bukhari v. Deloitte & Touche LLP*, No. 12 civ. 4290, 2012 WL 5904815, *5 (S.D.N.Y. Nov. 26, 2012).

Defendant argues that "the operative facts relating to decisions regarding CTL classification occurred outside of this District." Dkt. No. 17-1 at 15.  Plaintiff's pleadings identified operative facts include that he lives and continues to work for Defendant in the Northern District of New York, and the allegations rise out of his contacts with Defendant in New York and Defendant's alleged conduct in New York.  *See* Dkt. No. 1 at ¶ 8.  In considering the

---

potential nationwide collective action.

overall events, including that Plaintiff lives and works in Defendant's location in this District, that the alleged legal violations took place in this District, and that Defendant is headquartered in Pennsylvania, this factor weighs against transfer.

### *f. Ability of the Transferee Court to Compel Unwilling Witnesses*

Courts look to "evidence" that non-party witnesses would refuse to appear if transferred or if not transferred. *See Bryant*, 2018 WL 898230, at *4 (S.D.N.Y. Feb. 5, 2018). The Court has not received such evidence. Defendants claim this factor favors transfer as the Middle District of Pennsylvania has subpoena power for unnamed former "Ollie's employees." *See* Dkt. No. 17-1 at 20. Further, "if the employees are still employed by Defendant at the time their testimony is to be taken, Defendant can surely compel them to testify without the need for legal process." *Id.*

Defendant argues this case is similar to *Gelwan v. Vermont Mutual Insurance Company*, where both parties identified likely non-party witnesses not under the defendant's employment who were outside of the subpoena power of the transferor court and living within that of the transferee court. *See Gelwan v. Vermont Mutual Insurance Company*, No 21-2365, 2021 WL 2588825, *3 (S.D.N.Y. June 23, 2021). Based on these facts, the concern about defendant's inability to compel witnesses "hamper[ing]" the defense favored transfer. *Id*.

In the instant matter, neither party specifically identified any non-party witnesses not under Defendant's employment who are outside of this Court's subpoena power. Additionally, in *Gelwan*, the plaintiff owned property in the transferee district, whereas the defendant did not have such "connection." *Id.* Plaintiff has no connection to proposed transferee district and Defendant failed to provide specific information about non-party witnesses it would not be able to compel should the Northern District of New York remain the venue. Given these facts, this factor does not weigh in favor of transfer.

### g. *Relative Means of the Parties*

"A party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." *Andres*, 914 F. Supp. 2d at 241 (citing *Federman Assocs. v. Paradigm Medical Indus., Inc.*, 1997 WL 811539, at *4 (S.D.N.Y. Apr. 8, 1997)).  Defendant does not address this factor. *See* Dkt. No. 17-1.  Accordingly, this factor does not weigh in favor of transfer.

### 3. *Interests of Justice*

In addition to the factors, *supra*, courts also consider the "interests of justice" and a transferee court's familiarity with applicable law.  "[C]ourts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy." *Wald v. Bank of America Corp.*, 856 F. Supp. 2d 545, 550 (E.D.N.Y. 2012).

Here, no case currently pending with the same underlying subject matter in the Middle District of Pennsylvania has been brought to the Court's attention.  Defendant argues that the Middle District of Pennsylvania better serves the interests of justice because of a case with similar subject matter against Defendant, in which a case was transferred from New Jersey in part because neither the plaintiff nor the defendant resided in the original venue. *Kane v. Ollie's Bargain Outlet Holdings, Inc.*, No. 1:18-cv-2261, 2020 WL 525845 (M.D. Pa. Feb. 22, 2022). The only relevant active case brought to this Court's attention is the one pending before this Court in *Spoto v. Ollie's Bargain Outlet, Inc.*, No. 5:22-cv-00836 (N.D.N.Y. 2022).  As there is no ongoing case in the proposed transferee district, but there is one in this District, this factor weighs against transfer.

### 4. Courts Familiarity with Applicable Law

Typically, this factor is given little weight as federal courts are deemed equally able to deal with federal law, regardless of district. *See Billing v. Commerce One, Inc.*, 186 F. Supp. 2d 375, 379 (S.D.N.Y. 2002); *Vassallo v. Niedermeyer*, 495 F. Supp. 757, 760 (S.D.N.Y. 1980). However, as there are state law claims, this factor may be given some weight disfavoring transfer because New York courts are especially familiar with New York Law. *See Von Pein v. Hedstrom Corp.*, No. 03-cv-2171, 2004 WL 60298, *4 (S.D.N.Y. May 4, 2004).

The Court finds that while the action could have been brought in the Middle District of Pennsylvania, most of the factors are neutral or weigh against transferring the case from the Northern District of New York to the Middle District of Pennsylvania. Accordingly, Defendant's motion is denied.

**B.     Motion for Equitable Tolling Under the FLSA**

Generally, in FLSA collective actions, the filing of the complaint is not enough to toll the statute of limitations for potential opt-in plaintiffs. *See* 29 U.S.C. § 256; 29 C.F.R. § 790.21(b)(2)(ii); *Kutzback v. LMS Intellibound, LLC*, 233 F. Supp. 3d 623, 628 (W.D. Tenn. 2017). Rather, tolling does not occur for potential opt-in plaintiffs until they opt-in. *See Rotari v. Mitoushi Sushi, Inc.*, 448 F. Supp. 3d 246, 254 (E.D.N.Y. 2020). However, a court may conclude that equitable tolling is appropriate in special or extraordinary circumstance. *See Xing Ye v. 2953 Broadway Inc.,* No. 18-cv-4941, 2020 WL 2904070, *4 (S.D.N.Y. June 3, 2020) (granting equitable tolling where the case was in the process of being settled, the settlement failed to be consummated, and the delay would have jeopardized opt-in plaintiffs). This case does not present an "extraordinary circumstance," and so the motion for equitable tolling is denied without prejudice.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, the Court hereby

**ORDERS** that Defendant's motion to transfer venue to the Middle District of Pennsylvania (Dkt. No. 17) is **DENIED**; and the Court further

**ORDERS** that Plaintiff's motion for equitable tolling (Dkt. No. 18) is **DENIED without prejudice**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 25, 2022
       Albany, New York

Mae A. D'Agostino
U.S. District Judge