UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JAMES PAULI, on behalf of himself and all others
similarly situated,

                         Plaintiffs,

          -against-

OLLIE'S BARGAIN OUTLET, INC.,



                          Defendants.

No. 5:22-cv-279-MAD-ML

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR CLASS CERTIFICATION

VIRGINIA & AMBINDER, LLP
Michele Moreno, Esq.
LaDonna Lusher, Esq.
40 Broad Street, 7th Floor
New York, New York 10004

*Counsel for Named Plaintiff and the Putative Class*

<u>TABLE OF CONTENTS</u>

<u>PAGE</u>

TABLE OF AUTHORITIES ..................................................................................................... ii

I.    CLASS CERTIFICATION SHOULD BE GRANTED ................................................ 1

    A.  Plaintiffs Have Satisfied Commonality ................................................................ 1

        1.  Defendant's Common Defense Supports Commonality and Negates Any Individualized Inquiry ........................................................................... 1

        2.  Plaintiffs Performance of Managerial Tasks Was De Minimis and Does Not Legitimize Their Exempt Classification ............................................. 4

        3.  Rule 23 Class Certification of this Limited New York Class is Warranted ...... 6

    B.  Plaintiffs' Claims Are Typical of the Putative Class ............................................. 11

    C.  Plaintiffs Have Satisfied The Predominance and Superiority Requirements ........ 15

    D.  Named Plaintiff Is An Adequate Representative ................................................... 18

II.    PLAINTIFFS' PROPOSED NOTICE SHOULD BE APPROVED .......................... 19

    A.  The Class Period is Appropriate ......................................................................... 19

    B.  Plaintiffs' Counsel's Communications with Class Members Are Privileged ...................................................................................................... 20

III.    PLAINTIFFS' PROPOSED PUBLICATION ORDER SHOULD BE APPROVED ............................................................................................................ 20

CONCLUSION ..................................................................................................................... 21

## TABLE OF AUTHORITIES

CASES                                                                                        PAGE

Amador v. Morgan Stanley & Co. LLC,
2013 U.S. Dist. LEXIS 19103 (S.D.N.Y. Feb. 7, 2013) ............................................................13

Andrade-Barteldes v. Valencia,
2023 U.S. Dist. LEXIS 215247 (S.D.N.Y. Dec. 4, 2023) ..........................................................11

Ayers v. SGS Control Servs.,
, 2007 U.S. Dist. LEXIS 19634 (S.D.N.Y. Feb.27, 2007) ...........................................................10

Bayne v. Napw, Inc.
2021 U.S. Dist. LEXIS 151438 (E.D.N.Y. Aug. 10, 2021) ...........................................................4

Benavides v Serenity Spa Ny Inc.,
2017 U.S. Dist. LEXIS 142137 (S.D.N.Y. Sep. 1, 2017) .....................................................13, 15

Bernstein v. Cengage Learning, Inc.,
2024 U.S. Dist. LEXIS 53241 (S.D.N.Y. Mar. 20, 2024) ..........................................................20

Bondi v. New Rochelle Hotel Assocs.,
2018 U.S. Dist. LEXIS 209005 (S.D.N.Y. Dec. 7, 2018) ..........................................................10

Carollo v. United Capital Corp.,
528 F. Supp. 3d 37 (N.D.N.Y. March 24, 2021) .......................................................................19

Clougher v. Home Depot U.S.A., Inc.,
696 F. Supp.2d 285 (E.D.N.Y. 2010) .......................................................................................10

Colozzi v. St. Joseph's Hosp. Health Ctr.,
275 F.R.D. 75 (N.D.N.Y. 2011) ...............................................................................................19

D'Angelo v. Hunter Bus. Sch., Inc.,
2023 U.S. Dist. LEXIS 131029 (E.D.N.Y. July 28, 2023) ...........................................................1

Damassia v. Duane Reade, Inc.,
250 F.R.D. 152 (S.D.N.Y. 2008) ........................................................................ *passim*

Downie v. Carelink, Inc.,
2018 U.S. Dist. LEXIS 125184 (S.D.N.Y. July 26, 2018) ..........................................................19

Dziennik v. Sealift, Inc.,
2006 U.S. Dist. LEXIS 33011 (E.D.N.Y. May 23, 2006) ..........................................................14

Espinoza v. 953 Assocs. LLC,
280 F.R.D. 113 (S.D.N.Y. 2011) ................................................................1

Gortat v. Capala Bros.,
2009 U.S. Dist. LEXIS 101837 (E.D.N.Y. Oct. 16, 2009), *R&R adopted*, 2010 U.S. Dist. LEXIS
35451 (E.D.N.Y. Apr. 9, 2010), *aff'd*, 568 F. App'x 78 (2d Cir. 2014) .................................13, 14

Headly v. Liberty Homecare Options, LLC,
2022 U.S. Dist. LEXIS 107353 (D. Conn. June 16, 2022) .........................................14

Heckle v. Matrix Absence Mgmt., Inc.,
2022 U.S. Dist. LEXIS 225514 (S.D.N.Y. Dec. 14, 2022) .........................................7

Indergit v. Rite Aid Corp.,
293 F.R.D. 63 (S.D.N.Y. 2013) ................................................................8

In re "Agent Orange" Prod. Liab. Litig.,
818 F.2d 145 (2d Cir. 1987) ................................................................20

Jackson v. Bloomberg, L.P.,
298 F.R.D. 152 (S.D.N.Y. Mar. 19, 2014) ......................................................8

Jacob v. Duane Reade, Inc.,
602 F. App'x 3 (2d Cir. 2015) .........................................................9, 10, 16

Lawrence v. NYC Med. Prac., P.C.,
2021 U.S. Dist. LEXIS 96763 (S.D.N.Y. 2021) .................................................18

Li v. Fleet N.Y. Metro. Reg'l Ctr. LLC,
2022 U.S. Dist. LEXIS 93927 (E.D.N.Y. May 25, 2022) .........................................13

Martinez v. Ayken, Inc.,
2016 US Dist LEXIS 25556 (E.D.N.Y. 2016) ....................................................1

Martinez v. JLM Decorating, Inc.,
2024 U.S. Dist. LEXIS 51672 (S.D.N.Y. Mar. 20, 2024) .........................................19

Morris v. Affinity Health Plan, Inc.,
859 F. Supp. 2d 611 (S.D.N.Y. 2012) .........................................................10

Myers v. Hertz Corp.,
624 F.3d 537 (2d Cir. 2010).................................................................16

Nyok Moy Leong v. Laundry Depot, LLC,
2023 U.S. Dist. LEXIS 171922 (E.D.N.Y. 2023) .............................................15, 19

Omiatek v. Big Lots Inc.,
2011 WL 13210089 (W.D.N.Y. Jan. 20, 2011) ...............................................................10

Perez v. Allstate Ins. Co.,
2014 U.S. Dist. LEXIS 130214 (E.D.N.Y. Sept. 16, 2014) ...............................................8

Pichardo v. Carmine's Broadway Feast Inc.,
2016 U.S. Dist. LEXIS 78276 (S.D.N.Y. June 13, 2016), *adopted by*, 2016 U.S. Dist. LEXIS
130658, (S.D.N.Y. Sept. 23, 2016) ...............................................................15

Quiang Lu v. Purple Sushi Inc.,
447 F. Supp. 3d 89 (S.D.N.Y. 2020) ...............................................................21

Rahman v. Smith & Wollensky Rest. Group, Inc.,
2007 U.S. Dist. LEXIS 37642 (S.D.N.Y. May 24, 2007) ...............................................................20

R.B. v. United Behav. Health,
2023 U.S. Dist. LEXIS 162918 (N.D.N.Y. Sept. 14, 2023) ...............................................................18

Reich v. S. New England Telecomms. Corp.,
121 F.3d 58 (2d Cir. 1997) ...............................................................18

Rivera v. Harvest Bakery, Inc.,
312 F.R.D. 254 (E.D.N.Y. 2016) ...............................................................11

Roach v. T.L. Cannon Corp.,
2017 U.S. Dist. LEXIS 229549 (N.D.N.Y. Sep. 27, 2017) ...............................................................7, 10

Ruiz v. Citibank, N.A.,
93 F. Supp. 3d 279 (S.D.N.Y. 2015), *reconsideration denied*, 2015 U.S. Dist. LEXIS 101777
(S.D.N.Y. Aug. 4, 2015), *aff'd*, 687 Fed. Appx. 39 (2d Cir. 2017), and *aff'd*, 687 Fed. Appx. 39
(2d Cir. 2017) ...............................................................7

Singh v. Anmol Food Mart, Inc.,
2024 U.S. Dist. LEXIS 14475 (E.D.N.Y. Jan. 26, 2024) ...............................................................20

Stevens v. HMSHost Corp.,
2012 U.S. Dist. LEXIS 146150 (E.D.N.Y. Oct. 10, 2012) ...............................................................15

Tyson Foods, Inc. v. Bouaphakeo,
577 U.S. 442 (2016) ...............................................................18

DHR Rest. Co., LLC,
2017 U.S. Dist. LEXIS 18102 (S.D.N.Y. Feb. 3, 2017) ...............................................................10

<u>Valdez v Michpat & Fam,</u>
2022 US Dist. LEXIS 3708 (E.D.N.Y. Jan. 6, 2022) ..................................................21

<u>Walmart-Mart Stores, Inc. v. Dukes,</u>
564 U.S. 338 (2011) ...................................................................................................10

<u>Youngblood v. Family Dollar Stores, Inc.,</u>
2011 U.S. Dist. LEXIS 115389 (S.D.N.Y. Oct. 4, 2011) ......................................8, 10

<u>STATUTES</u>                                                              <u>PAGE</u>

Fed. R. Civ. P. 23 .................................................................................... *passim*

Fed. R. Civ. P. 23(a) ......................................................................................10

Fed. R. Civ. P. 23(a)(2) ..................................................................................11

Fed. R. Civ. P. 23(a)(3) ..................................................................................11

28 U.S.C. § 1746(2) .........................................................................................2

29 C.F.R. § 541.100 ......................................................................................4, 5

29 C.F.R. § 541.106(a) .....................................................................................4

29 C.F.R. § 541.700(a) .....................................................................................5

Plaintiffs submit this reply in further support of their motion for class certification. As set forth below, Plaintiffs have satisfied all requirements of Rule 23, thereby warranting certification.[1] Plaintiffs' claims for unpaid overtime are not novel nor materially distinct from the numerous unpaid wage cases that are regularly certified and recognized as "about the most perfect" type of claim for class treatment. Martinez v. Ayken, Inc., 2016 U.S. Dist. LEXIS 25556, *24, 38-39 (E.D.N.Y. 2016) (citing cases). Given the Second Circuit's liberal construction of Rule 23 and its general preference for granting class certification, Plaintiffs' motion should be granted. D'Angelo v. Hunter Bus. Sch., Inc., 2023 U.S. Dist. LEXIS 131029, at *6 (E.D.N.Y. July 28, 2023) ("Any factual disputes relevant to the Rule 23 requirements must be resolved and any doubts should be resolved in favor of certification.") (citations omitted); Espinoza v. 953 Assocs. LLC, 280 F.R.D. 113, 124 (S.D.N.Y. 2011) ("The Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification.") (citations omitted).

## I.    CLASS CERTIFICATION SHOULD BE GRANTED

### A.  Plaintiffs Have Satisfied Commonality

Plaintiffs have sufficiently demonstrated that they share one common claim – Ollie's blanket exemption of all CTLs[2] from earning overtime compensation that is due and owing.[3] Plaintiffs have produced sufficient evidence supporting their claim and demonstrating that Defendant's corporate office operates its New York stores in a centralized manner utilizing

---

[1] Defendant does not contest that Plaintiffs meet the numerosity requirement.
[2] All defined terms utilized in Plaintiffs' initial motion are continued herein.
[3] As noted by Defendant, Plaintiffs are only moving for class certification of their New York Labor Law overtime claims. [Ex. A, Complaint Second Claim For Relief.]

uniform policies and practices that apply to all CTLs[4]; that CTLs are regularly assigned to work more than forty hours per week[5]; that Defendant uniformly classifies all CTLs as exempt from overtime without making an individualized determination of each CTL's job responsibilities[6]; that CTLs spend the majority of their time performing the same non-exempt work as Defendant's other non-exempt employees[7]; that DTLs use summary email groups to issue directives to CTLs from all stores within their region (including directives to perform non-exempt work), resulting in the identical operation of all New York stores[8]; and that any "exempt" work that CTLs do perform takes up a fraction of their time and is performed within the confines of template forms and checklists generated by corporate, requiring very little independent discretion or judgment.[9] This evidence is substantial and supports the commonality of Plaintiffs' claim that they should have been paid overtime.

---

[4] See Exs. J-M, universal policies mandated by corporate headquarters; Ex. N, labor hour budgets determined at the corporate level utilizing a standardized formula for all stores; Ex. Q, DTF Recaps and FIT schedulers showing uniform implementation of the labor hours budget formula and chronic understaffing; Exs. S, T, template counseling and interview forms sent from corporate to all stores.

[5] Ex. V, Team Leader Schedules

[6] See Ex. B, pp.85:2-7, 88:18-89:9 showing Defendant classifies all CTLs as exempt from overtime and has not revisited that classification since 2012 because "we believe that our current status, once again, *in the store confines* that we have classified our teams in the correct status"; Ex. B, 93:10-13 ("we looked at the complete store structure and changed many titles, and came up with the job descriptions"); Dkt. 44-16, pp.25:9-27:2, Osborne testimony that CTLs are classified as exempt regardless of state, region, district, store size, staff size, sales volume, experience, training, STL, DTL, duties, tasks, responsibilities, or shift.

[7] See Ex. U, Ollie's-Pauli-ESI070324, HRIS policy giving ATLs access to Recruiting and Onboarding Gateways so they can "perform all the same tasks as STLs and CTL[s] (e.g. publish opportunities and review applicants)…as well as launch Onboarding and complete the onboarding process for new hires."; Ex. U, ATLs at various stores issuing employee counseling and communicating with DTLs about store scheduling; Ex. V, ATLs are routinely scheduled to be the only Leadership Team member in the store and opening and/or closing the store; Ex. O, Pauli Dep., pp. 45:14-48:15, performed same work as hourly workers; Ex. Y, Swain Decl., ¶¶11-16, performed same work as hourly workers at New Hartford and DeWitt; Ex. Y, Pauli Decl. ¶13-16 (same); Ex. DD, Declaration of Cindy Galuppo (made under the penalty of perjury in accordance with 28 U.S.C. 1746(2)).

[8] See Ex. B, pp.32:12-34:6, 38:2-21, Exs. F, G, and R, examples of emails.

[9] See Exs. S, T template counseling and interview forms; Ex. F, emails demonstrating DTLs require final approval over all hiring, firing, disciplining, and scheduling; Ex. U, performance counseling directing that they be reviewed by corporate prior to being administered; Ex. P, Swain Dep., p.102:11-20, Q: But you in your capacity as co-team lead administered and put associate counseling warnings, final warnings and terminations; is that correct? A. Yes. We filled out a form that was preprinted by corporate that we just entered names and numbers. Everything else was predetermined and we sent it to HR for approval. Then they sent us yes or no, this is good to go."

Defendant argues that commonality has not been satisfied because it claims that: 1) an individualized inquiry of each CTL's duties is needed to determine if they are exempt from overtime; 2) even if CTL's performed some manual work, that does not render them non-exempt; and 3) this Court's denial of Plaintiffs' collective certification motion – made prior to class discovery – somehow precludes this Court from finding that Plaintiffs have satisfied the requirements of Rule 23.  All of Defendant's arguments are meritless and should be rejected.

### 1. Defendant's Common Defense Supports Commonality and Negates Any Individualized Inquiry

Since 2012, Defendant has uniformly classified *all* CTLs as exempt from overtime compensation.  Defendant assigned this blanket classification without considering the location or size of the store where CTLs worked, the duties performed, the store's volume of sales, the DTL who oversaw the CTLs' work or any of the other factors it now claims preclude Plaintiffs from proceeding on a class-wide basis. Defendant also admits that all CTLs are subject to a singular job description (Ex. D), share the same expected  job responsibilities (Def. Br. p. 7), and that it uniformly classifies CTLs as exempt without making an individualized determination of each CTL's job responsibilities (Ex. B, p. 85:2-7, 88:18-89:9; Dkt. 44-16, pp.25:9-27:2). These admissions are fatal to its opposition as Defendant is clearly asserting a common defense. Defendant cannot rely on its blanket policy that all CTLs satisfy the exemption criteria , but then argue that class certification is precluded because an individualized inquiry of each CTL is required to determine whether overtime should be paid.

Defendant's argument also improperly requires Plaintiffs to prove the merits of their claims on a motion for class certification.  At this stage, Plaintiffs do not have the burden of demonstrating that all class members were aggrieved by Defendant's allegedly unlawful policies or practices. It would be antithetical to class certification if Plaintiffs were required to prove the merits of each

class members' claim before they were even designated as class members. The relevant inquiry is not whether the employees were *victims* of Defendants' unlawful policies or practices but rather whether they were *subject* to the unlawful policies and practices alleged. <u>Bayne v. Napw, Inc</u>., 2021 U.S. Dist. LEXIS 151438, at *12-13 (E.D.N.Y. Aug. 10, 2021) ("While it is true that Plaintiffs must eventually prove liability, they need not do so now. And while the Court's class-certification analysis must be rigorous and may entail some overlap with the merits, 'Rule 23 grants courts no license to engage in free-ranging merits inquires at the certification stage.'") (citations omitted). Just like the defendants in <u>Bayne</u>, here, Defendant "seek[s] to inject a merits-based inquiry into the determination of commonality. Such an effort must be rejected. Suffice it to say that Plaintiffs have established that Defendants operated under a common payment policy that treated all [CTLs] equally — they were not paid overtime for any hours they worked in excess of 40 per week. At this point, that, coupled with their evidentiary submissions, is enough to sustain commonality." <u>Id</u>. at *16.

## 2. Plaintiffs Performance of Managerial Tasks Was De Minimis and Does Not Legitimize Their Exempt Classification

Much of Defendant's opposition is inappropriately focused on proving that Plaintiffs were properly exempt from overtime. For example, Defendant argues that concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption. 29 CFR §541.106(a). Again, this is a merits-based argument that is not appropriately considered on class certification. Nevertheless, it warrants a response because Defendant omits relevant language from the statute which states that "[c]oncurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption ***if the requirements of § 541.100 are otherwise met.***" 29 CFR §541.106(a) (emphasis added). Those requirements include, *inter alia*, that an employee's "primary duty" is management or non-manual work directly related to

management. *See* 29 C.F.R. §541.100. "Primary duty" is defined as "the principal, main, major or most important duty that the employee performs." 29 C.F.R. §541.700(a).

Here, Plaintiffs allege and have provided evidence demonstrating that Defendant's corporate-led business model, uniform policies and standardized formula for profitability relied on CTLs' primarily performing non-exempt, manual tasks. The actual time that CTLs spent performing any managerial duties was minimal and required little independent discretion. [Exs. S, template counseling forms with pre-populated language; Ex. T, template interview checklists and guides listing out interview questions; Ex. P, Swain Dep., p. 102:11-20.]

For example, Plaintiff Pauli worked for Defendant from 8/16/2013 to 9/9/2022 (3,311 days). [Ex. X.] During that nine year period, he interviewed and recommended employees on only 50 occasions, counseled or disciplined employees only 75 times, prepared 13 performance appraisals, and signed 80 wage theft protection act notices. [Def. Br. p.5.] Even giving Defendant the benefit of the doubt and assuming each of these tasks were performed on a different day and took the entire day to complete – which is nearly impossible –Plaintiff Pauli spent 1.51% of his employment interviewing and recommending employees (50/3,311 x 100), 2.26% of his employment counseling and disciplining employees (75/3,311 x 100), 0.39% of his employment preparing performance appraisals (13/3,311 x 100), and 2.41% of his employment signing wage theft protection act notices (80/3,311 x 100). These statistics substantiate Pauli's testimony that over 90% of his time was spent performing non-exempt tasks. [Ex. O, p.46:6-12; Ex. Y, Pauli Decl., ¶13.] Similar findings can be made for the other New York CTLs. For example:

> Mike Giampa (Cheektowaga) worked for Defendant from 10/27/2009 to 5/1/2023 (4,934 days). He therefore spent 1.80% of his time interviewing and recommending employees (89/4,934 x 100), 0.04% issuing performance counseling (2/4,934 x 100), 0% issuing performance reviews (0/4,934 x 100), 0.24% signing NY Wage Notices (12/4,934 x 100), and 0.04% on "other personnel docs." (2/4,934 x 100).

[Moreno Reply Decl. ¶8, showing similar statistics in multiple examples for all NY CTLs identified on Defendant's Summary of CTL Managerial Duties from 13 Sample Stores (Caminiti Decl. Ex. I).]

Clearly, CTLs performed "exempt" duties for an extremely small percentage of their time and, as Plaintiffs allege, spent the majority of their time doing manual labor. Plaintiffs contend that these non-exempt duties are CTLs' primary duties, thereby making them eligible for overtime compensation. Plaintiffs' common claim can be proven by, *inter alia*, this same statistical analysis, thereby satisfying commonality under Rule 23. *See* Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 156-157 (S.D.N.Y. 2008) ("there are significant elements of proof that are common across all class members, and that do not require an individualized examination.").

### 3. Rule 23 Class Certification of this Limited New York Class is Warranted

Defendant's reliance on this Court's denial of conditional certification of Plaintiffs' Fair Labor Standards Act ("FLSA") claims as grounds for also rejecting Rule 23 certification of a New York Labor Law class should be disregarded. In denying conditional certification, this Court found that, at the time, the evidence available did not warrant a nationwide collective. [Dkt. 93, pp. 11-12.] This Court further found that, standing alone, the corporate policies and Associate Handbook did not demonstrate that CTLs across four hundred stores in twenty-eight states were improperly classified as exempt. Id. Since that time, there have been two significant developments that distinguish this application. First, the class is significantly narrowed to encompass only New York CTLs. Second, the parties have engaged in additional substantive discovery that supports Plaintiffs' class-wide allegations. [*See* Section A, *supra*, citing Exs. B, DD, F, G, J- N, P- V.]

Classes have been certified in similar actions by courts recognizing that, "'because employee-plaintiffs can rarely point to an explicit policy of their employer that is violative of their

rights, including their rights under the relevant wage and hour laws,…employee-plaintiffs can present evidence of actionable *de facto* policies by presenting 'enough evidence to confidently suggest a uniform, or nearly uniform, practice occurring across branch offices.'" Roach v. T.L. Cannon Corp., 2017 U.S. Dist. LEXIS 229549, *15-16 (N.D.N.Y. Sep. 27, 2017) (quoting Ruiz v. Citibank, N.A., 93 F. Supp. 3d 279, 289 (S.D.N.Y. 2015), *reconsideration denied*, 2015 U.S. Dist. LEXIS 101777 (S.D.N.Y. Aug. 4, 2015), *aff'd*, 687 Fed. Appx. 39 (2d Cir. 2017), and *aff'd*, 687 Fed. Appx. 39 (2d Cir. 2017)). Here, Plaintiffs submitted evidence that Defendant's corporate office issued uniform policies and practices that are implemented at all New York stores, and utilized a standardized productivity formula that relies on CTL performance of manual labor to make Defendant's business profitable. [Exs. J-N, Q.] This, combined with evidence of top down directives to CTLs to perform manual labor in lieu of managerial work (Ex. R, district wide email instructing CTLs to work on freight instead of "paper work"), examples of chronic understaffing for the freight process (Ex. Q),  and examples of schedules showing that CTLs regularly worked in excess of fifty hours per week while non-exempt employees worked significantly fewer hours (Ex. V), is sufficient to raise an inference that Defendant maintained a *sub silentio* policy of misclassifying CTLs as exempt from overtime in an effort to save money.

If Plaintiffs were required to prove the existence of an explicit written policy directing CTLs to perform non-exempt work, any claim premised on misclassification of an overtime exemption could never be certified – employers do not typically acknowledge their wage violations in writing. Employers could wholly misclassify a job position then evade any meaningful liability by requiring hundreds of workers to come forward with individual lawsuits to vindicate their rights – a highly unlikely event given workers limited financial resources and fear of retaliation. This is precisely why courts repeatedly find wage and hour cases suitable for class treatment, including

those asserting claims of misclassification. See <u>Heckle v. Matrix Absence Mgmt., Inc.</u>, 2022 U.S. Dist. LEXIS 225514, *9 (S.D.N.Y. Dec. 14, 2022) (granting class certification of telephonic claims examiners misclassified as exempt from overtime, and finding that common questions with the potential to generate common answers existed, such as "what TCEs' primary job duties are …and whether the TCEs' duties as described in the Matrix Best Practices consist of 'work directly related to management policies or general operations of" defendant pursuant to the administrative exception.'"); <u>Indergit v. Rite Aid Corp.</u>, 293 F.R.D. 632, 651, 653 (S.D.N.Y. 2013) (granting class certification of store managers and finding that Defendant's treatment of all store managers as exempt was sufficient for commonality and predominance, even if the day-to-day work may have varied somewhat); <u>Jackson v. Bloomberg, L.P.</u>, 298 F.R.D. 152 (S.D.N.Y. Mar. 19, 2014) (granting class certification of Global Customer Support Representatives alleging misclassification); <u>Perez v. Allstate Ins. Co.</u>, 2014 U.S. Dist. LEXIS 130214, *41 (E.D.N.Y. Sept. 16, 2014) (granting class certification of insurance adjusters, where "plaintiffs have shown that Adjusters in New York are subject to uniform policies and a uniform evaluation system, receive uniform training, and operate pursuant to a uniform job description—all common evidence of their job duties."); <u>Youngblood v. Family Dollar Stores, Inc.</u>, 2011 U.S. Dist. LEXIS 115389, at *9-10 (S.D.N.Y. Oct. 4, 2011) (granting class certification of store managers, finding commonality satisfied based on evidence of corporate policies that set forth the essential job functions of all store managers, and finding that "[e]ven assuming that there are some variations among the daily tasks performed…these detailed corporate policies, which (Defendants concede) store managers are 'expected' to read and follow… 'create common questions as to whether [store managers] are properly classified as…exempt'") (internal citations omitted); <u>Damassia</u>, 250 F.R.D. at 156-157  (granting class

certification of assistant store managers, finding commonality satisfied by uniform job description and testimony that defendant classified all ASMs as exempt without assessing their job duties).

In fact, the Second Circuit has specifically held that such claims are appropriate for class certification. In affirming class certification in a nearly identical case, the Second Circuit noted:

> [T]he common contention to be proved is whether Duane Reade misclassified its employees as exempt from New York's overtime requirements. In concluding that this contention was subject to classwide resolution, the district court relied on evidence showing that (i) Duane Reade uniformly classifies all ASMs as exempt without an individualized determination of each ASM's job responsibilities, and (ii) Duane Reade ASMs carry out their duties pursuant to a uniform policy, uniform training, and uniform procedures across all stores. *See Jacob I*, 289 F.R.D. at 415. In addition, the district court concluded that the deposition testimony of Duane Reade's former director of training and development established that Duane Reade ASMs have "similar baseline responsibilities from store to store." *Id*.

> We cannot conclude that the district court abused its discretion in concluding that a classwide proceeding could generate a common answer to the question of whether Duane Reade misclassified its ASMs.

Jacob v. Duane Reade, Inc., 602 F. App'x 3, 6 (2d Cir. 2015). Here too, the evidence shows that Defendant uniformly classifies all CTLs as exempt from overtime without performing an individualized determination of each CTL's job responsibilities (Ex. B, p. 85:2-7, 88:18-89:9, 93:10-13; Dkt. 44-16, pp.25:9-27:2), that CTLs carry out their duties pursuant to uniformly applied policies and procedures (Exs. J-N, Q, S, T), and that CTLs at all locations have similar baseline responsibilities (Ex. D, singular job description). Moreover, the evidence shows that employees were frequently sent to perform work at other locations – a strong indicator of uniform store operations (Ex. I, Examples of inter-store coverage).

Accordingly, Defendant's contention that the performance of non-exempt work depended on the individual CTL and other factors, while contested by Plaintiffs, does not defeat commonality. At trial, Plaintiffs can present generalized proof of Defendant's *de facto* or *sub silentio* policy of uniformly classifying all CTLS as exempt and utilizing them to perform non-

exempt work in an effort to avoid paying its hourly employees overtime. [Exs. J-M, universal policies; Ex. N, payroll budgets determined at the corporate level utilizing a standardized formula; Ex. Q, DTF Recaps and FIT schedulers showing uniform implementation of the payroll budget formula and chronic understaffing amongst various locations.] *See also* <u>Roach</u>, 2017 U.S. Dist. LEXIS 229549, *37-38 ("The fact there were deviations from the alleged *de facto* policy does not necessarily mean that the policy did not exist."); <u>Ayers v. SGS Control Servs.</u>, No. 03 Civ. 9077, 2007 U.S. Dist. LEXIS 19634 (S.D.N.Y. Feb.27, 2007) (rejecting defendants' argument for decertification where plaintiffs worked under different managers and had different individual timekeeping practices, such that individual inquiries into hours worked would have to be conducted, and noted that Plaintiffs challenged a company-wide policy, rather than individualized instances of failure to pay overtime).[10],[11]

Plaintiffs' case is akin to <u>Damassia</u> and <u>Tamayo v. DHR Rest. Co., LLC</u>, 2017 U.S. Dist. LEXIS 18102, *22-23 (S.D.N.Y. Feb. 3, 2017) where the courts found "managerial duties were

---

[10] Defendant's reliance on <u>Walmart-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 350 (2011) does not support its position that certification is not warranted. <u>Dukes</u>, described by the Supreme Court as "one of the most expansive class actions ever," involved several different gender discrimination claims by a putative class of 1.5 million employees nationwide. <u>Id</u>. at 342. It is frequently cited by defendants and is routinely rejected as unpersuasive. <u>Morris v. Affinity Health Plan, Inc.</u>, 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012) ("The weight of authority rejects the argument that *Dukes* bars certification in wage and hour cases.") (collecting cases). "Unlike the claims in [<u>Dukes</u>], [Plaintiffs'] NYLL claims do not require an examination of the subjective intent behind millions of individual employment decisions; rather, the crux of this case is whether the company-wide policies, as implemented, violated [Plaintiffs'] statutory rights." <u>Youngblood</u>, 2011 U.S. Dist. LEXIS 115389, at *13-14 (citations omitted). Here, Plaintiffs assert one common claim for unpaid overtime that applied to approximately 160 CTLs in one state, to which Defendant asserts the same exemption defense. Moreover, the evidence overwhelmingly demonstrates that Defendant maintains uniform policies which are implemented in an identical manner across all New York stores

[11] Defendant's citation to <u>Omiatek v. Big Lots Inc.</u>, 2011 WL 13210089 (W.D.N.Y. Jan. 20, 2011) is also unavailing. <u>Omiatek</u> was decided in 2011, four years prior to the Second Circuit's decision in <u>Jacob</u>, 602 F. App'x 3. While the <u>Omiatek</u> court found that individualized factual analyses of each class member's daily experiences would be necessary, thereby defeating certification, the Second Circuit has since affirmed under nearly identical circumstances, "that the question of whether Duane Reade ASMs were misclassified was subject to classwide resolution." <u>Id</u>. Accordingly, <u>Omiatek</u> is neither binding nor instructive, and its reasoning has never been cited or relied upon by another court (except for <u>Bondi v. New Rochelle Hotel Assocs.</u>, 2018 U.S. Dist. LEXIS 209005, *32 (S.D.N.Y. Dec. 7, 2018), which cites <u>Omiatek</u> for the general proposition that "'[I]f a court determines that any one of the prerequisites of Rule 23(a) has not been satisfied, then it need not consider the remaining requirement of the rule.'"

not necessarily the most important part of [the employees'] jobs," and were routinely performed by other employees. Id. (citing Clougher v. Home Depot U.S.A., Inc., 696 F. Supp.2d 285, 291 (E.D.N.Y. 2010)). Here, other members of the Leadership Team – STLs and ATLs – performed the same duties as CTLs, yet ATLs were classified as non-exempt and paid overtime. [Ex. U, ATLs interview, recommend employees for hiring and termination, supervise and counsel employees, prepare performance evaluations, conduct store safety inspections and meetings with employees, open and close stores, take cash deposits to the bank, sign onboarding paperwork, communicate directly with DTLs on scheduling and implementing storewide policies and procedures, schedule employees' work hours, and communicate directly with DTLs for scheduling approval.]  In fact, ATLs are routinely scheduled to be the only Leadership Team member in the store, and consequently supervise all other employees as the sole Team Leader on duty.  [Ex. V.]

**B. Plaintiffs' Claims Are Typical of the Putative Class**

For the same reasons that Plaintiffs satisfy commonality, they also satisfy typicality. "'The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3). The crux of both requirements is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" Andrade-Barteldes v. Valencia, 2023 U.S. Dist. LEXIS 215247, at *9 (S.D.N.Y. Dec. 4, 2023) (citations omitted); Rivera, 312 F.R.D. at 269-72 (if "a plaintiff provides proof of a common policy or practice on the part of the defendant to underpay its workers, courts frequently find typicality to be satisfied for largely the same reasons that they find commonality to be satisfied").

Plaintiffs have submitted evidence and testimony supporting that CTLs in New York primarily performed the same type of non-exempt work as Named Plaintiff and share the same claims. [*See e.g.*, Ex. O, Pauli Dep., pp. 48:25-29:2, 45:4-49:15, listing his duties and stating that "all the things that I just stated. That's what C.T.L.s do in the company, that's what they're instructed to do."; pp. 303:2-305:14, in response to whether he knows anything about what CTLs did in any other stores: "We were all instructed to do the same stuff of all Ollie's throughout all our C.T.L.s were all instructed. They did almost all the same - - same things that I did" because "everything comes down from the corporate office…they basically manage the store."; Ex. D, Spoto Dep., pp. 163:14-165:9, he has also witnessed CTLs working in the Middletown, and they "primarily focused on" running the register, putting merchandise out, helping with the truck process, sweeping floors, running a floor scrubber; Ex DD, Galuppo Decl., ¶¶ 13-19, the CTLs in Oswego, Auburn, and DeWitt performed the same work as Plaintiff Pauli in Cicero, and that "the way that the corporate office and the District Team Leaders directed our work, I believe Co-Team Leaders at all of the New York locations spent significantly more time unloading trucks, unpacking product, stocking shelves, doing store recovery, cleaning, etc…than they did doing things like interviewing, counseling, and scheduling. They really had no choice, because this type of stuff had to get done pursuant to the company policies."; Moreno Decl., ¶8, percentages of time worked.].

Defendant's purported contradictory evidence, such as declarations from other CTLs, does not defeat typicality:

"[Defendant] attempts to defeat typicality by pointing out examples of management responsibilities that some assistant managers testify they exercised. For example, they say that some named plaintiffs testify that they were 'in charge' of the store when store managers were absent, that they had responsibilities to train and supervise other store employees, to make recommendations on hiring and firing employees, to recommend ordering of supplies, and that they attended management meetings … This evidence does not defeat typicality. First, as will be discussed below with regard to predominance, the evidence does not establish significant differences in the responsibilities exercised by

different assistant managers. Second, to the extent that there are such differences, they do not make named plaintiffs' claims atypical."

Damassia, 250 F.R.D. at 158. Moreover, the declarations are inherently unreliable and coercive, as every single declaration was procured from a current employee whose livelihood depends on Defendant's favor. Courts in the Second Circuit are unequivocal that "declarations submitted by employers of current employees are regularly disregarded" at both the conditional and class certification stages, "because of the chance for coercion by the employer, [and] because the evidentiary burden is relatively low." Benavides v Serenity Spa Ny Inc., 2017 U.S. Dist. LEXIS 142137, *15-18 (S.D.N.Y. Sep. 1, 2017) (citing Amador v. Morgan Stanley & Co. LLC, 2013 U.S. Dist. LEXIS 19103, *3 (S.D.N.Y. Feb. 7, 2013)); Gortat v. Capala Bros., 2009 U.S. Dist. LEXIS 101837 (E.D.N.Y. Oct. 16, 2009), R&R adopted, 2010 U.S. Dist. LEXIS 35451 (E.D.N.Y. Apr. 9, 2010), aff'd, 568 F. App'x 78 (2d Cir. 2014) ("[n]umerous courts have found that contacts with putative class members warranted judicial intervention," (collecting cases) and refusing to consider affidavits submitted by employer in opposition to certification because "defendants' unsupervised communications sought to limit the rights of putative class members without the benefit of court-approved notice about the pending class action."). There is a "policy concern in permitting such affidavits to be considered, because it would 'provide an incentive for defendants in this case, and in other cases, to engage in improper and potentially coercive communications with members of a putative class.'" Benavides, 2017 U.S. Dist. LEXIS 142137 *17 (quoting Gortat, 2009 U.S.Dist. LEXIS 101837, *15). See also Li v. Fleet N.Y. Metro. Reg'l Ctr. LLC, 2022 U.S. Dist. LEXIS 93927, at *29 (E.D.N.Y. May 25, 2022) (finding that "[i]f the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive.") (citations omitted); Duarte v. Tri-State Physical Med. & Rehab., P.C., 2012 U.S. Dist. LEXIS 96249, *26-27 n.12 (S.D.N.Y. July 10, 2012) ("One of the

very purposes of the opt-out nature of a class action, particularly in the wage claim context, is to protect individuals who fear retaliation or are otherwise reluctant to assert their rights.").

It is also baseless for Defendant to assert that this action does not have the support of other CTLs.  [Def. Br., pp.32-33.] "In the first instance, it is not clear that Plaintiff has any obligation to indicate what the relative interest in a class action may be in order to certify a class under Rule 23." Headly v. Liberty Homecare Options, LLC, 2022 U.S. Dist. LEXIS 107353, at *35 (D. Conn. June 16, 2022).  Moreover, given that no notice of this action has been issued and that Defendant has engaged in unsupervised communications with class members, "[i]t is unclear how many putative class members know about this action, or what they know, particularly as Plaintiff no longer works at [Ollie's]." Id. (citing Gortat, 2009 U.S. Dist. LEXIS 101837, at *4 (finding that certain affidavits "are not a reliable indicator of a lack of interest in joining the class.")).

Defendant also engaged in a campaign to intimidate Named Plaintiff from obtaining declarations in support of his own case. Throughout this litigation, Defendant has made false and unfounded allegations that Named Plaintiff engaged in "improper solicitation" of fellow CTLs. [*See e.g.*, Def. Br. p. 2, fn. 3; Dkt. 53, Defendant's Opposition to Conditional Certification, pp. 1, 23-24; Dkt. 81-2, Defendant's Brief in Support of Motion to Compel, pp. 2, 5-8.] Despite requests for it, the only evidence Defendant has ever submitted in support of its disparaging allegations was *a single text message* between co-workers, which did not amount to solicitation. [Dkt. 53-37; Moreno Reply Decl. ¶10.] Dziennik v. Sealift, Inc., 2006 U.S. Dist. LEXIS 33011, *11 (E.D.N.Y. May 23, 2006) ("As a preliminary matter, plaintiffs generally have a right to contact members of the putative class"). These false allegations deterred Named Plaintiff from having any communications with former co-workers and chilled his ability to freely communicate with putative class members. Defendant should not be rewarded for making false allegations of

solicitation while then engaging in unsupervised communications with putative class members to obtain declarations for its own benefit. As astutely noted by the Court in refusing to consider similar declarations in <u>Damassia</u>, "[a]pparent inconsistencies in the record [from defendant's declarations] are the result of overly aggressive lawyering rather than credible testimony of assistant managers or anyone else." <u>Damassia</u>, 250 F.R.D. at 161.

In any event, the declarations submitted by Defendant should be disregarded as they focus on the merits of the putative class claims and "primarily attest to the ways in which Defendants were in compliance with the…NYLL, which is not the primary concern of a motion for class certification." <u>Benavides</u>, 2017 U.S. Dist. LEXIS 142137, *17. "Defendants may wish to submit these [or similar] declarations at a later stage in the litigation" to refute Plaintiffs' claims; "[a]t the class certification stage, however, the declarations fall short." <u>Pichardo v. Carmine's Broadway Feast Inc.</u>, 2016 U.S. Dist. LEXIS 78276, *32 (S.D.N.Y. June 13, 2016), *adopted by*, 2016 U.S. Dist. LEXIS 130658 (S.D.N.Y. Sept. 23, 2016); <u>Stevens v. HMSHost Corp.</u>, 2012 U.S. Dist. LEXIS 146150, *11 (E.D.N.Y. Oct. 10, 2012) (overruling defendant's objections to certification of assistant manager misclassification case, finding that "defendants attempt to bolster their argument by providing declarations of current [ ] employees, whose day-to-day managerial experiences differ from plaintiffs…such evidence cannot be used to undermine a plaintiff's initial showing because doing so would require a court to weigh evidence and determine credibility" which is not appropriate at this stage). Accordingly, typicality is satisfied.

## C. Plaintiffs Have Satisfied The Predominance And Superiority Requirements

A class action is undoubtedly superior as it would be highly inefficient to adjudicate the separate claims of over one hundred class members. Moreover, "[f]or many individual employees, 'the amount of potential recovery is low and likely to be outweighed by the individual cost of

litigation.'" <u>Nyok Moy Leong v. Laundry Depot, LLC</u>, 2023 U.S. Dist. LEXIS 171922, *20-23 (E.D.N.Y. 2023) (citations omitted). "Additionally, a significant number of the class members may still be employed by Defendants and therefore 'concerned about potential retaliation,' which 'further diminishes the likelihood of individual action.'" <u>Id</u>. "Courts throughout the Second Circuit have found class certification to be the superior method of litigating wage-and-hour claims based on similar considerations." <u>Id</u>.

Regarding predominance, the Second Circuit has held that the fact that an overtime exemption analysis may require consideration of an employee's actual duties, does not make it an "inherently individualized inquiry, such that class treatment will never be appropriate in exemption cases," and that "district courts in this Circuit have certified classes on state law claims that turn on the question of FLSA exemption for a particular group of employees." <u>Myers v. Hertz Corp.</u>, 624 F.3d 537, 549 (2d. Cir. 2010) (citing <u>Damassia</u>, 250 F.R.D. 152). *See also* <u>Jacob</u>, 602 F. App'x at 7 (2d Cir. 2015). Predominance will be satisfied "if the plaintiffs can show that 'some' of the…questions [relevant to the exemption analysis] can be answered with respect to the members of the class as a whole 'through generalized proof' and that those common issues are 'more substantial' than individual ones." <u>Myers</u>, at 547 (citations omitted).

Given this precedent, certification of Plaintiffs' overtime claims should be granted. Plaintiffs have shown that their common claim can be addressed through generalized proof, and Defendant admits that all CTLs are automatically classified as exempt, regardless of any purported individualized differences that Defendant's now argue. [Ex. B, p.85:2-7, 88:18-89:9, 93:10-13; Dkt. 44-16, pp.25:9-27:2.] Predominance has been satisfied under identical circumstances.

For example, in <u>Damassia</u> the defendant argued that individualized issues predominated because the duties and responsibilities of the assistant managers varied in ways that bore upon the

analysis of whether management was their primary duty, and that the extent of their managerial work depended on a number of factors such as which store manager they worked under, the amount of experience they had, and the size, hours, sales volume, and location of the store. Id. at 159. Like the Defendant here, the defendant supported this argument using testimony from other, currently employed assistant managers. Id. Nevertheless, predominance was met because the defendant "sets forth the duties of all assistant managers in a single job description document," "has a single set of 'protocols' that are 'applied to all [ ] stores in New York State,' "has a single 'Employee Rules Handbook,'" and "admit[ted] that it does not consider any factors other than job title in deciding to categorize an assistant manager as exempt . . . That is to say, Duane Reade considers all assistant managers exempt, regardless of a store's hours of operation, size, sales volume, location, and regardless of an assistant manager's work shift, tenure, management style or any other of the factors that Duane Reade now argues might contribute to material differences in the responsibilities of assistant managers. That Duane Reade itself makes such a blanket determination is evidence that differences in the position, to the extent that there are any, are not material to the determination of whether the job is exempt from overtime requirements." Id. at. 159. The Court also rejected the contradictory declarations of current employees finding that they "were clearly composed by lawyers, with little input, it seems, from the assistant managers themselves," and "to the extent that there are differences, there is no evidence that they are of such a magnitude as to cause individual issues to predominate.  Where, as here, there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees challenging their classification as exempt, despite arguments about "individualized" differences in job responsibilities." Id. at 159-160 (collecting cases).

Here, Plaintiffs will prove CTLs' primary job duties through generalized evidence, such as the singular job description, the uniform policies issued from the corporate office, the Associate Handbook, the standardized labor hours formula, a statistical sampling of managerial documents such as the one in Moreno Reply Decl. ¶8, *supra*, and representative testimony from class members. *See e.g.* Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 460 (2016) (plaintiffs may use a "representative sample to establish classwide liability"); Reich v. S. New England Telecomms. Corp., 121 F.3d 58, 67 (2d Cir. 1997) (same). For these reasons, it is also judicially economical to adjudicate Plaintiffs' claims on a classwide basis, which will ensure uniform resolution of the exemption issue. Accordingly, the superiority and predominance requirements are satisfied.

### D. Named Plaintiff Is An Adequate Representative

Because the Named Plaintiff seeks the same relief as the class members, has no conflicts with the other class members, is familiar with the lawsuit, and is fully aware of his claims and those he seeks to represent, he is adequate. [Ex. O, Pauli Dep.' Ex. Y, Pauli Decl.] Named Plaintiff sat for a nearly eight-hour deposition during which he demonstrated his familiarity and personal knowledge of the facts and claims in this case, as well as his willingness to represent the class. [Ex. O, pp. 296:21-297:12, stating he represents all CTLs.] Named Plaintiff also demonstrated his commitment by responding to written discovery and even submitting his cell phone for forensic imaging. [Moreno Reply Decl. ¶9.] R.B. v. United Behav. Health, 2023 U.S. Dist. LEXIS 162918, *8 (N.D.N.Y. Sept. 14, 2023) (adequacy met where plaintiff was "familiar with his responsibilities as a class representative and willingly undertakes his duty to act in the best interests of the class [and]… has participated actively in this lawsuit..."); Lawrence v. NYC Med. Prac., P.C., 2021 U.S. Dist. LEXIS 96763, *27-30 (S.D.N.Y. 2021) (adequacy met where plaintiffs "either sat for

depositions or submitted declarations in support of the motion for class certification, indicating they are familiar with the case and are actively pursuing their claims").

Named Plaintiff's failure to recognize two attorney drafted documents at his deposition and recall a few inconsequential events does not render his memory "so faulty as to render him an unreliable and inadequate class representative." [Def. Br. pp. 29-30.] [12] The testimony Defendant cites is immaterial to the issues in the litigation, particularly when viewed in relation to the rest of Pauli's deposition, during which he provided detailed responses. Downie v. Carelink, Inc., 2018 U.S. Dist. LEXIS 125184, *17 (S.D.N.Y. July 26, 2018) ("[Plaintiff's] inability to recall certain facts at her deposition 'does not impugn [her] credibility in any meaningful way,' is 'not so material that it renders [her] inadequate to represent the proposed class,' and does not 'jeopardize the interests of the class in any way.'") (citations omitted). *See also* Carollo v. United Capital Corp., 528 F. Supp. 3d 37 (N.D.N.Y. March 24, 2021) ("[C]ourts in this Circuit will typically only find adequacy lacking if 'attacks on the credibility of the representative party are so sharp as to jeopardize the interests of absent class members.'").

## II.    PLAINTIFFS' PROPOSED NOTICE SHOULD BE APPROVED

### A.  The Class Period is Appropriate

Defendant erroneously argues, without any support, that the class period should be limited. [Def. Br. p.34.] Defendant's argument is baseless because the class period is dictated by the statute of limitations, which goes back six years from the date the action was commenced. *See* NYLL § 189(3)); Martinez v. JLM Decorating, Inc., 2024 U.S. Dist. LEXIS 51672 (S.D.N.Y. Mar. 20,

---

[12] By Defendant's logic, its own 30(b)(6) witness is unreliable. *See e.g.* Ex. B, Osborne Dep., p. 15:19-22 (did not recall when he first learned of this lawsuit); p. 18:19-21 (did not recall his job title at the time of the *Kane* matter); p. p28:16-29:5, 32:8-11 (did not recall the last time the New York stores were redistricted); p. 75:9-13 (did not recall when the FFS job description was last updated prior to January 2019); p. 78:9-12 (did not recall when the DTL job description was last updated prior to November 2016); pp. 97:17-98:18 (did not recall if the budgeted labor hours changed for the stores after reclassifying ATLs to non-exempt); p. 110:6-11 (did not recall whether the DTF policy replaced a prior policy); pp. 117:17-118:10 (did not recall what year the DTF policy was updated after May 2016).

2024) (certifying a NYLL class based on six year statute of limitations); <u>Nyok Moy Leong</u>, 2023 U.S. Dist. LEXIS 171922, *26 (same); <u>Colozzi v. St. Joseph's Hosp. Health Ctr.</u>, 275 F.R.D. 75, 88 (N.D.N.Y. 2011) (same).  Moreover, Defendant admits that it blanketly classified all CTLs as exempt since at least 2012.  Accordingly, the proper class period is March 22, 2016 to the present.

### B.  Plaintiffs' Counsel's Communications with Class Members Are Privileged

Plaintiffs dispute Defendant's position that "[a]ll communications with" Plaintiffs' counsel should be changed to "[a]ll communications *regarding the lawsuit*."  Rule 23(c) "makes the Class the attorney's client for all practical purposes." <u>Rahman v Smith & Wollensky Rest. Group, Inc.</u>, 2007 US Dist LEXIS 37642 (S.D.N.Y. May 24, 2007) (citations omitted). Class members should be informed that all communications they have with Plaintiffs' counsel are protected for the purpose of obtaining or providing legal advice – not just those related to the lawsuit.[13]

## III.    PLAINTIFFS' PROPOSED PUBLICATION ORDER SHOULD BE APPROVED

Plaintiff's proposed publication order contemplates that Notice be distributed once via first class mail, once by electronic method (either mail or text message), and that it be made available on counsel's websites. [Ex. CC, ¶1.] It is important that class members receive and have access to the notice, as they will be bound by any judgment or settlement unless they affirmatively opt out of this lawsuit. <u>In re "Agent Orange" Prod. Liab.</u>, 818 F.2d 145 (2d Cir. 1987). Plaintiffs' proposed order comports with the traditional ways that Rule 23 class notice is disseminated and should be approved. *See e.g.* <u>Bernstein v. Cengage Learning, Inc.</u>, 2024 U.S. Dist. LEXIS 53241, *2 (S.D.N.Y. Mar. 20, 2024); <u>Singh v Anmol Food Mart, Inc.</u>, 2024 US Dist. LEXIS 14475 (E.D.N.Y.

---

[13] Plaintiffs do not object to Defendant's proposed revisions for: (1) deleting reference to NYLL § 195(3) claims; (2) changing "wages" to "overtime" under "Your Legal Rights and Options in this Lawsuit,"; or (3) using a third-party administrator for opt-outs.

Jan. 26, 2024); <u>Valdez v Michpat & Fam</u>, 2022 US Dist. LEXIS 3708 (E.D.N.Y. Jan. 6, 2022);

<u>Quiang Lu v. Purple Sushi Inc.</u>, 447 F. Supp. 3d 89, 97 (S.D.N.Y. 2020).[14]

## **CONCLUSION**

For the reasons set forth above and in Plaintiffs' moving papers, as well as those set forth in accompanying Declaration and Reply Declaration of Michele A. Moreno, and the exhibits annexed thereto, Plaintiffs respectfully request that this Court issue an Order (1) certifying this action as a class action pursuant to Fed. R. Civ. P. 23; (2) authorizing that notice of this matter be published to members of the putative class in the form attached as Ex. BB to the Moreno Decl.; (3) ordering Defendants produce a full and complete class list within thirty (30) days from the date of the Court's order in accordance with the proposed Order attached to the Moreno Decl. as Ex. CC; and (4)  such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
           May 17, 2024

_____/s/_____
Michele A. Moreno, Esq.
LaDonna M. Lusher Esq.
VIRGINIA & AMBINDER, LLP
40 Broad Street, 7th Floor
New York, New York 10004
Tel: (212) 943-9080
mmoreno@vandallp.com
llusher@vandallp.com

GATTUSO & CIOTOLI, PLLC
Frank S. Gattuso, Esq.
The White House
7030 E. Genesee Street
Fayetteville, New York
315-314-8000
fgattuso@gclawoffice.com

*Counsel for Plaintiffs*

---

[14] Defendant's objection to publication via newspaper and/or trade publication is premature. That publication is a hypothetical situation that Defendant will have a chance to object to at a later date if an application is made.