**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JAMES PAULI, *individually and on behalf of all***
***others similarly situated*,**

                                        **Plaintiff,**

        **vs.**                                                    **5:22-CV-00279**
                                                                  **(MAD/ML)**

**OLLIE'S BARGAIN OUTLET, INC.,**

                                        **Defendant.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

**GATTUSO & CIOTOLI, PLLC**               **FRANK S. GATTUSO, ESQ.**
The White House
7030 East Genesee Street
Fayetteville, New York 13066
Attorneys for Plaintiff

**VIRGINIA & AMBINDER, LLP**              **JAMES E. MURPHY, ESQ.**
40 Broad Street, 7th Floor                **MICHELE A. MORENO, ESQ.**
New York, New York 10004                  **LADONNA LUSHER, ESQ.**
Attorneys for Plaintiff

**FISHER & PHILLIPS**                     **HEATHER Z. STEELE, ESQ.**
Two Logan Square, 12th Floor
100 North 18th Street
Philadelphia, Pennsylvania 19103
Attorneys for Defendant

**FISHER & PHILLIPS**                     **KATHLEEN MCLEOD CAMINITI, ESQ.**
430 Mountain Avenue
Suite 303
Murray Hill, New Jersey 07974
Attorneys for Defendant


**Mae. A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

1

## I. INTRODUCTION

On March 22, 2022, Plaintiff James Pauli ("Plaintiff"), individually and as representative of the proposed Class, filed this putative class action against his former employer, Defendant Ollie's Bargain Outlet, Inc. ("Defendant" or "Ollie's"), alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").  *See* Dkt. No. 1.  Plaintiff previously moved to conditionally certify a nationwide collective of people currently and formerly employed by Defendant as Co-Team Leaders ("CTLs"), pursuant to 29 U.S.C. § 216(b), which the Court denied on November 15, 2023.  *See* Dkt. Nos. 44, 93.

Now before the Court is Plaintiffs' motion pursuant to Rule 23 to certify a class of current and former CTLs in Defendant's New York stores based on his second and third causes of action for unpaid overtime "spread of hours" compensation and "wage notice and pay statement violations" under the New York Labor Law, as well as Defendant's response in opposition to class certification.  Dkt. No. 1 at ¶¶ 39, 58-66; *see also* Dkt. Nos. 100, 111.

## II. BACKGROUND

Defendant is a bargain retail chain offering "closeout merchandise and excess inventory" that operates "approximately 431 stores in [twenty-nine] states," including "approximately [twenty-eight] locations in New York[.]"  Dkt. No. 1 at ¶ 11.  The twenty-eight stores in New York are allocated across four districts, each of which typically has its own District Team Leader ("DTL") who provides oversight and support to the Store Team Leaders ("STLs") and CTLs at each store.  *See* Dkt. No. 111 at 13.  Each store is run by one STL, and one or more CTL, who is second in command under the STL.  *See id.*  Each store also has at least one Assistant Team Leader ("ATL"), a Freight Flow Supervisor ("FFS"), a Customer Service Supervisor ("CSS"), and a number of Associates who are tasked with operating the register and manual labor.  *See* Dkt.

No. 100-1 at 10; *see also* Dkt. No. 100-4 at 19-20.  "Defendant classifies all of its STLs and CTLs as exempt from overtime, and all other positions, including ATLs and FFSs, as non-exempt."  *Id.*

According to the complaint, "[i]n practice, the job duties of [CTLs] are indistinguishable from the Customer Service Associates, Sales Associates, Sale Supervisor, [FFS] and [ATL] positions for 95% of the workday."  Dkt. No. 1 at ¶ 20.  However, those positions are "classified as non-exempt and paid overtime compensation" whereas CTLs are "misclassified as exempt and not paid overtime."  *Id.* at ¶ 20.  Plaintiff claims that

> STLs, CTLs and ATLs share the same primary responsibilities of utilizing financial drivers for decision making, supervising associate appearance and morale, engaging in daily communications with associates and shift huddles, oversight of store recovery and store programs, ensuring compliance with corporate redbook policies and practices, implementing corporate sales and operations directives, enforcing customer service policies and ensuring customer satisfaction.

Dkt. No. 100-1 at 20.

Based on Defendant's job description, CTLs are responsible for

> (1) assisting the STL with managing payroll budgets, expenses, store banking, shrink reduction, and the timely completion of related reports to ensure financial and operational goals are met; (2) implementing successful strategies for merchandising; (3) managing the Door to Floor ("DTF") process and ensuring that merchandise is planned for and received properly; (4) ensuring that all Associates are provided daily tasks and are being productive; (5) ensuring that all merchandising standards and sales goals are met; (6) ensuring that all customer service standards meet company expectations; (7) developing and executing plans for coaching, training, developing, evaluating, supervising, and scheduling store Associates; (8) maintaining proper hiring, recruiting, interviewing, selection, and onboarding of candidates to ensure the staffing needs of the store are continually met; (9) ensuring proper scheduling and staffing for business needs, including time keeper integrity; (10) communicating Company directives and programs to Associates and ensuring that all follow-up items are completed accurately and timely.

Dkt. No. 111 at 14-15.

Plaintiff is attempting to certify a class of CTLs who were or are employed at Ollie's stores in New York. *See* Dkt. No. 100-1 at 8. Plaintiff alleges that he, and the proposed class members, either did not perform the duties enumerated in the CTL job description related to managerial work, or that those managerial duties occupied a very small percent of the work performed as a CTL. *See id.* at 18; *see also* Dkt. No. 100-17 at 13. Plaintiff claims that the vast majority of his duties, and those of other CTLs, coincided with the responsibilities of hourly employees. *See* Dkt. No. 100-1 at 21; *see also* Dkt. No. 100-17 at 13. Plaintiff alleges that the CTLs consistently worked over forty hours per week, typically working between fifty and sixty hours a week, but did not receive additional compensation for that time because they were classified as exempt from the overtime provisions of the NYLL. *See* Dkt. No. 100-1 at 8; *see also* Dkt. No. 100-2 at ¶ 7.

Plaintiff worked as a CTL at an Ollie's store in Cicero, New York, from November 2013 through September 2022. *See* Dkt. No. 53-25 at 16:22-25, 17:2-3. Plaintiff alleges that he consistently worked fifty-to-sixty hours per week, except during holidays when he worked more hours, but that his pay stubs reflect that he worked forty hours a week. *See* Dkt. No. 1 at ¶¶ 22-23, 26. Plaintiff was paid a flat weekly salary of $940 regardless of how many hours he worked. *See id.* at ¶ 25. Plaintiff does not contest that, as a CTL, he "interviewed, recommended and counseled employees, prepared performance appraisals, or signed off on onboarding paperwork," but avers that he did so with ATLs, who were not classified as exempt, and that the manner in which he did those tasks did not require "independent discretion or judgment," and therefore do not satisfy the requirements for classifying him as an exempt employee. Dkt. No. 100-1 at 18. In

4

Plaintiff's deposition, he testified that other employees in the store "were all hourly and [he] was not hourly, but [ ] was doing the same work as they were, [and] found [him]self doing probably . . . all that same work ninety, ninety-five percent of the time[.]"  Dkt. No. 100-17 at 13.  Plaintiff also testified that he "provide[d] leadership" by working "alongside . . . hourly associates" and giving "them tips [on] how to do things really quick."  *Id.* at 13-14.

Plaintiff has one proposed opt-in Plaintiff: Bob Swain.  *See* Dkt. No. 85-1.  Swain worked as a CTL for Defendant in New Hartford, New York, and in Dewitt, New York.  *See* Dkt. No. 100-18 at 15, 33.  Swain testified that he "worked a lot of hours," *id.* at 33, but received a salary of $870.54 a week regardless of how many hours he worked.  *See id.* at 22-23.  Swain also testified that he would participate in conference calls with store team leaders when the STL was absent from the store in Hartford.  *See id.* at 27-28, 33.

### III. DISCUSSION

A.      **Legal Standards**

"A district court enjoys broad discretion when it comes to resolving questions of class certification because it 'is often in the best position to assess the propriety of the class and has the ability . . . to alter or modify the class, create subclasses, and decertify the class whenever warranted.'"  *V.W. by and through Williams v. Conway*, 236 F. Supp. 3d 554, 572 (N.D.N.Y. 2017) (quoting *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001) (collecting cases)).  "'In evaluating a motion for class certification, the district court is required to make a "definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues," and must resolve material factual disputes relevant to each Rule 23 requirement.'"  *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010) (quoting *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006)).

Rule 23 sets forth four requirements for class certification:

> (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law and fact are common to the class, (3) the claims or defenses of the representative parties are typical of the claims of defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).  "A party seeking class certification must affirmatively demonstrate [its] compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) ("Rule 23 does not set forth a mere pleading standard").  "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202-03 (2d Cir. 2008)).  Accordingly, the Court may not "rely on the pleadings alone to decide Plaintiff['s] motion" but must instead look "beyond the pleadings to consider the parties' evidentiary submissions and make factual findings where those submissions conflict[ ]." *Jacob v. Duane Reade, Inc.*, 602 Fed. Appx. 3, 5 (2d Cir. 2015).

Additionally, courts have added an "'implied requirement' into the Rule: a party seeking certification must demonstrate that the proposed class is 'ascertainable.'" *V.W.*, 236 F. Supp. 3d at 573 (quoting *Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 287 (S.D.N.Y. 2012)). "Under this additional element, '[a]n identifiable class exists if its members can be ascertained by reference to objective criteria.'" *Id.* (quoting *Stinson v. City of N.Y.*, 282 F.R.D. 360, 367 (S.D.N.Y. 2012)).  "In sum, '[c]lass certification is appropriate where the proposed class meets, by a preponderance of the evidence following a court's "rigorous analysis," the requirements of Rule 23(a) and the proposed class constitutes one of the types of classes enumerated in Rule 23(b)."'

*Id.* (quoting *Stinson*, 282 F.R.D. at 367).

"Before certifying a putative class, a district court must decide that it satisfies not only Rule 23(a)'s prerequisites of numerosity, commonality, typicality, and adequacy of representation, but also one of the three criteria of Rule 23(b)." *Royal Park Invs. v. Wells Fargo Bank*, No. 14-CV-9764, 2018 WL 1831850, *4 (S.D.N.Y. Apr. 17, 2018).  In this case, Plaintiff claims that he has met the requirements of Rule 23(b)(3) for the purposes of money damages.  *See* Dkt. No. 100-1 at 22.  A Rule 23(b)(3) class may be certified if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fᴇᴅ. R. Cɪᴠ. P. 23(b)(3).  "Where a plaintiff seeks both declaratory and monetary relief, the court may separately certify a damages-seeking class under Rule 23(b)(3), and an injunction-seeking class under Rule 23(b)(2)." *Mazzanti v. Gen. Elec. Co.*, No. 13-CV-1799, 2017 WL 923905, *3 (D. Conn. Mar. 7, 2017).

In a motion for class certification, a plaintiff must establish the Rule 23 requirements by a preponderance of the evidence.  *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 276 (2014) ("[P]laintiffs wishing to proceed through a class action must actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23, including (if applicable) the predominance requirement of Rule 23(b)(3)").  The determination of whether the plaintiff has satisfied his or her burden "may sometimes overlap with merits issues, though the determination as to a Rule 23 requirement is not binding on the trier of fact in its determination of the merits." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015); *see also Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013) ("Merits questions may be

considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied").

**B.      Class Certification**

*1. Numerosity*

The first element of certification under Rule 23 requires Plaintiff to demonstrate that "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1).  This inquiry is "not strictly mathematical" but rather requires a court to consider the context of the instant case in light of the following factors: "(i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members." *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 120 (2d Cir. 2014) (citing *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).  In other words, "[t]he numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC*, 504 F.3d 229, 244–45 (2d Cir. 2007).  A plaintiff need only "show some evidence of or reasonably estimate the number of class members" and "need not show the exact number." *Robidoux*, 987 F.2d at 935.  "Numerosity is typically presumed if the class stretches to include forty members." *Raymond v. New York State Dep't of Corr. & Cmty. Supervision*, 579 F. Supp. 3d 327, 336 (N.D.N.Y. 2022) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).

Here, Plaintiff claims that the proposed class includes approximately 110 CTLs employed in New York stores.  *See* Dkt. No. 103-15.  Additionally, some of the proposed class members

appear to be located in the Albany, New York area, whereas others appear to reside in Dunkirk, New York, Oswego, New York, and other locations across the state.  *See id.*  Therefore, the geographic dispersion and number of the proposed class members weighs in favor of a finding of numerosity.

Defendant does not challenge Plaintiff's contention that the putative statewide class of Ollie's CTLs would be large enough to satisfy the numerosity requirement of Rule 23(a)(1). Defendant does, however, challenge Plaintiff's showing with respect to the "commonality," "typicality," and "adequate representation" requirements of Rule 23(a), as well as the "predominance" and "superiority" requirements of Rule 23(b)(3).  *See* Dkt. No. 111 at 30-41.

Accordingly, the Court is satisfied that Plaintiff has established numerosity.

### 2. Commonality

The second element of certification under Rule 23 requires Plaintiff to demonstrate that there "are questions of law or fact common to the class."  FED. R. CIV. P. 23(a)(2).  This element "does not require all questions of law or fact to be common," and "even a single common question will suffice."  *Sykes*, 285 F.R.D. at 286; *see also Wal-Mart*, 564 U.S. at 349-50 (explaining that class members' claims "must depend upon a common contention . . . of such a nature that it is capable of class wide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke").

"Plaintiffs may satisfy the commonality requirement with 'significant proof' that a general policy or practice caused the alleged violations of class members' rights."  *J.B. v. Onondaga Cnty.*, 401 F. Supp. 3d 320, 331 (N.D.N.Y. 2019) (quoting *Wal-Mart*, 564 U.S. at 353).  "'Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.'"  *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128,

137-38 (2d Cir. 2015) (quoting *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014)).  "As relevant to the commonality requirement, the [Supreme Court] clarified that the existence of a 'common contention' is not sufficient; rather, '[t]hat common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"  *Callari v. Blackman Plumbing Supply, Inc.*, 307 F.R.D. 67, 75 (E.D.N.Y. 2015) (quoting *Wal-Mart*, 564 U.S. at 350).

"'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'"  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (quotation omitted).  "Furthermore, in order to certify a class, the proponent of class certification need not show that the common questions 'will be answered, on the merits, in favor of the class.'"  *Johnson*, 780 F.3d at 138 (quoting *Amgen Inc.*, 568 U.S. at 459).

> To certify a company-wide class action, the employees "must show either (i) an express company policy that violated the employee-plaintiffs' rights; or (ii) a practice that had sufficiently pervaded the company that it had become a de facto policy, which the plaintiffs can show by, among other things, anecdotal evidence that reaches a certain critical mass or comprehensive statistical analysis."

*Khalid v. DJ Shirley 1 Inc.*, No. 15-CV-5926, 2018 WL 9963873, *6 (E.D.N.Y. June 26, 2018) (quoting *Mendez v. U.S. Nonwovens Corp.*, 312 F.R.D. 81, 92 (E.D.N.Y. 2014)).

Plaintiff contends that his claim regarding the legality of Defendant's corporate policy classifying CTLs as exempt from the NYLL's overtime requirements and regularly scheduling them to work more than fifty hours per week presents questions of fact and law common to the class, arising from the same course of events, and subject to the same legal arguments as would be

made on behalf of all CTLs working at Defendant's New York stores.  *See* Dkt. No. 100-1 at 25.

Plaintiff claims that there is a common question "whether putative class members were properly

classified as exempt under the administrative or executive exemptions."  *Id.* at 26.  In opposition,

Defendant argues that, to the extent Plaintiff or any other CTL in New York has a claim for

overtime, that claim does not arise from a discrepancy between the CTL job description and the

corporate policy of uniformly classifying CTLs as non-exempt, but from the facts and

circumstances necessary to determine whether or not each CTL's individual experience in the

CTL position fulfills the requirements for exempt status.  *See* Dkt. No. 111 at 31-35.  Defendant

argues that Plaintiff cannot establish that there are common questions of fact because the

individual experiences of the CTLs in performing their managerial responsibilities varies widely.[1]

*See id.*

 Defendant's job description indicates that CTLs spend the majority of their time managing

the store and performing exempt tasks, including "assisting the STL with managing payroll

budgets, expenses, store banking, shrink reduction, and the timely completion of related reports;"

merchandising the store; managing the process of receiving merchandise and moving it from the

delivery bay to the sales floor within twenty-four hours of its arrival; ensuring that associate

employees are given daily tasks and remain productive; "developing and executing plans for

coaching, training, developing, evaluating, supervising, and scheduling store Associates;"

recruiting, interviewing, hiring, and onboarding new associates; "ensuring proper scheduling and

staffing for business needs, including time keeper integrity;" and "communicating Company

---

[1] Defendant also argues at length that the time CTLs spend performing non-exempt activities does not alter their exemption status.  However, this is the type of free-ranging merits argument that courts have cautioned against considering at the class certification stage.  *See Amgen Inc.*, 568 U.S. at 465-66; *see also Wal-Mart*, 564 U.S. at 350-51.

directives and programs to Associates and ensuring that all follow-up items are completed accurately and timely."  Dkt. No. 111 at 14-15; *see also* Dkt. No. 111-2 at 8-9.

Plaintiff has shown that Defendant uniformly classifies all CTLs as exempt from NYLL overtime provisions without an individualized determination and regardless of the size of store, number of employees, sales volume, experience, training, duties, tasks, responsibilities, shift, or management style of the store's STL or DTL.  *See* Dkt. No. 44-16 at 25:9-25, 26:1-24; Dkt. No. 122 at 9.  Plaintiff has also shown that he and the proposed opt-in Plaintiff were subject to this policy as CTLs employed at Defendant's stores in New York.  *See* Dkt. No. 44-6 at ¶¶ 3-11; Dkt. No. 1 at ¶¶ 21-26.

Plaintiff does not argue that Defendant's policy of the responsibilities assigned to CTLs describes a position that is clearly non-exempt.  Instead, Plaintiff asserts that Defendant treated him, and other CTLs in New York stores, a certain way, that is, requiring them to perform predominantly the same tasks as non-exempt workers, including the ATLs.  As such, Plaintiff's declarations and testimony appear to not attack the express company policy, but rather its implementation, suggesting that there was a *de facto* policy of requiring CTLs to perform non-exempt work.

In the absence of evidence of an explicit policy requiring CTLs to perform work "virtually identical to non-exempt employees, to circumvent the FLSA and the NYLL and avoid paying the [CTLs] overtime," Dkt. No. 1 at ¶ 18, Plaintiff must "produce significant anecdotal evidence from which the Court can infer a *de facto* policy."  *Mendez*, 312 F.R.D. at 96 (citing *Wal-Mart*, 564 U.S. at 358).  Conclusory statements of anecdotal individual violations "lack the kind of precision and detail from which the Court might infer a uniform policy on the part of the Individual Defendants to deny compensation to their employees."  *Mendez*, 312 F.R.D. at 97; *see also*

*Fernandez v. Wells Fargo Bank, N.A.*, Nos. 12-CV-7193, 12-CV-7194, 2013 WL 4540521, *8 (S.D.N.Y. Aug. 28, 2013) (noting that declarations may "constitute relevant evidence of a policy to require off-the-clock work and to limit overtime. However, their value as proof of a common policy is limited because of the lack of detail concerning the underlying communications").

Upon review of the material submitted, the Court finds that Plaintiff has failed to provide evidence sufficient to support an inference that there was a company-wide policy of requiring CTLs to perform work that would classify them as non-exempt. There are meaningful differences between what Plaintiff and Swain describe in the record as the work they performed as CTLs, and Defendant's advertised CTL job description. For example, the CTL job descriptions Defendant advertised state, *inter alia*, that a CTL "is required to provide leadership for the successful operation of the entire sales floor and receiving area. The CTL creates and leads a sales team . . . . Responsibilities include all aspects of merchandising, Associate development, customer service, and financial oversight." Dkt. No. 111 at 14; *see also* Dkt. No. 44-8. By contrast, Plaintiff alleges that he and other CTLs "engage[d] in very little management duties and have no meaningful discretion in the operation of Defendant's retail stores." Dkt. No. 100-2 at ¶ 8.

Plaintiff tries to establish that all CTLs are required to perform primarily non-exempt work based on the number of payroll hours assigned to each store and the amount of freight that Defendant requires to be unloaded in a twenty-four-hour period. *See* Dkt. No. 100-1 at 13-14. Plaintiff claims that "Defendant's policy and practice of allocating insufficient payroll hours places the burden on CTLs to make up for labor shortages by performing non-exempt work." *Id.* at 16. In contrast, Defendant contends that each store's CTL, and sometimes STL, decides how to divide the budgeted labor hours, and that "CTLs regularly request and receive additional hours beyond those budgeted if there is a legitimate reason." Dkt. No. 111 at 20.

Plaintiff also tries to establish that Defendant has a *de facto* policy of drastically under-allocating labor hours to unload freight and therefore requiring CTLs to perform the non-exempt work.  Plaintiff relies on "Schedulers" and "Recaps" from the store's policy of unloading freight to support this argument.  *See* Dkt. No. 100-1 at 14.  However, Defendant points to several inconsistencies between Plaintiff's claims and the supporting exhibits.  *See* Dkt. No. 111 at 21-22. For example, Defendant states that

> Plaintiff alleges that Store #75 needed 116 labor hours to unload freight arriving in a September 10, 2021 freight delivery, but only 53 were scheduled.  According to the Truck Notes, however, Store #75 had 53 hours scheduled for September 10th, 45 hours scheduled for the following day (Saturday) and 20 hours scheduled "for Sunday," totaling 118 hours "to finish up" the freight process.
>
> Plaintiff alleges that Store #112 needed 81 labor hours to unload freight arriving July 14, 2016, but only 67.5 were scheduled. According to the Truck Notes, however, Store #112 planned 67.5 hours for July 14th, and also scheduled three (3) employees Wednesday and Friday to "complete [the] truck."  *See* [Dkt. No.] 100-19.  If anything, Ollie's planned and scheduled more than enough hours to handle the anticipated freight delivery.

*Id.* (quoting Dkt. No. 103-8 at 1, 52).  The Court also finds that records Plaintiff submits of stores unloading freight from the truck to the store show significant variances between the number and type of employees involved in the process, the shift hours, whether the scheduled total hours are significantly below the number of associate hours needed, the detail of notes recorded, and whether workers are scheduled to work on the weekend to finish unloading.  *See* Dkt. No. 103-8. For example, Store eighty-five did not list any CSSs working and included notes on an employee who was late one day and a "no show" another day.  *Id.* at 30, 31.  The records for Store seventy-five on September 30, 2021, show a CSS, STL, an unscheduled CTL, and an FFS scheduled, and do not indicate a goal or the actual time to unload the freight.  *See id.* at 3.  The record does not

support Plaintiff's argument that Defendant has a uniform policy of under allocating labor hours and requiring CTLs to function as non-exempt workers by spending most of their time on manual labor.  If anything, the record suggests that that some stores have more detailed reporting or management styles than others, and some stores scheduled CTLs for unloading the freight, *see id.* at 1, 16, 27, 29, whereas others do not.  *See id.* at 30-38.

The Court also finds that Plaintiff's reliance on the freight unloading policy test project in two Pennsylvania stores is not relevant to this matter because here Plaintiff is trying to certify a class of CTLs in New York stores.  *See* Dkt. No. 103-7.  Additionally, as Defendant points out, the PowerPoint explicitly states that employees should "NEVER under schedule your truck," which weighs against finding that Defendant has an overarching policy of encouraging CTLs to under-schedule labor hours.  *Id.* at 27; *see also* Dkt. No. 111 at 21.

As additional support for his argument that Defendant has a *de facto* policy, Plaintiff submits an email from Brent Moody, a district team leader for Syracuse, New York, in which Moody critiques CTLs for "managing from the office" and "doing 'Paper Work' or working on plans" instead of "assist[ing] with truck unload," and instructs them that "[p]lanning out a manifest should take someone no longer than [thirty] minutes to [one] hour."  Dkt. No. 103-9 at 3.  Contrary to Defendant's assertions, this does not support the conclusion that CTLs were following company policy by "managing from the office, rather than overseeing the freight process," however it is also not clear that this supports Plaintiff's claim that there were policies of encouraging CTLs to spend minimal time on management tasks, since Moody still refers to the need for CTLs to "build morale" and manage the team, and because unloading trucks was not a daily task.  *Id.*; Dkt. No. 111 at 22.

On July 1, 2024, Plaintiff submitted a declaration from Colette Forjone, a CTL at the Auburn, New York store.  *See* Dkt. No. 128.  Forjone stated that she works "at least [fifty] hours per week" and sometimes "up to [fifty-five] hours," that her typical tasks are "identical to those of the hourly employees," including cleaning, stocking the shelves and unloading freight.  *Id.* at ¶¶ 4-6.  She also stated that, since around October 2023, she has been working closer to twenty or twenty-five hours per week because she was injured while unloading a truck at work and is now medically restricted to only perform light work.  *See id.* at ¶ 9.  Forjone declared that she has not completed any performance counseling independently, has only been involved in the hiring process for four employees, and is required to send her District team leader pictures to verify that tasks, such as displaying the product, are done correctly.  *See id.* at ¶¶ 11-12, 17.  Because of her injury, the tasks Forjone completes and the time she spends on them is clearly unique.  Therefore, the same questions of fact that would resolve the question of whether Forjone was misclassified as exempt would not resolve the inquiry into whether Plaintiff or other CTLs in New York were also misclassified.

In support of the argument CTLs duties vary from store to store, Defendant submits testimony from Scott Osborne, Defendant's Vice President of Operations.  Dkt. No. 44-16.  Osborne testified that, although there is an opening checklist for stores nationwide, "what the decision-maker needs to do with that checklist is very different from each one of [Defendant's] stores."  *Id.* at 72:3-10.  Osborne also testified that a "CTL can do different things based on the sales volume and the unique footprint of [the] store[].  Each Ollie's is very different."  *Id.* at 14:13-16.

Defendant also relies on numerous declarations from current and former CTLs to show that there are meaningful differences in the tasks that CTLs engage in, and therefore that an

inquiry into whether any particular CTL was misclassified as exempt would not necessarily apply to other CTLs in New York stores.  *See* Dkt. No. 111 at 23-28.  Defendant contends that the declarations it submits from twenty-three CTLs in New York stores and twenty-one STLs, nine of whom had previously worked as CTLs, support its argument that there are "wide variations among CTLs in their management responsibilities, for example with regard to scheduling, merchandising, overseeing the freight process, ensuring profitability of the stores, and supervision of store employees, including hiring, firing and discipling non-exempt associates."  Dkt. No. 111 at 31.  Defendant claims that the record shows that the different experiences of CTLs in different stores in New York "necessitate an employee-by-employee assessment and preclude class certification."  *Id.*

As an initial matter, the Court notes that, when determining whether to grant FLSA conditional certification, "declarations submitted by employers of current employees are regularly disregarded in the context of conditional certification of a collective action, both because of the chance for coercion by the employer, but also because the evidentiary burden is relatively low." *Benavides v. Serenity Spa NY Inc.*, No. 15-CV-9189, 2017 WL 3835880, *5 (S.D.N.Y. Sept. 1, 2017) (citing *Amador v. Morgan Stanley & Co. LLC*, No. 11-CV-4326, 2013 WL 494020, *8 (S.D.N.Y. Feb. 7, 2013)) (other citations omitted).  Although the Court currently addresses class action certification, not FLSA conditional certification, similar policy concerns apply.  However, unlike other cases where courts have found that declarations were "in all material respects identical [to] one another" and appear to be "obviously crafted to describe a position" that counters the other side's argument, the many declarations Defendant submits here vary in their contents, such as whether they address the number of hours they worked weekly, and sometimes offer statements which may support Plaintiff's arguments about the nature of the CTLs' work.

*Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 159 (S.D.N.Y. 2008) (disregarding depositions when considering the application of Rule 23 requirements because the declarations have nearly identical language and the court found them to be not credible in light of other deposition testimony).  The Court will consider the declarations Defendant submits in the context of the entire record before it, although the Court is mindful of the policy concerns Plaintiff addressed. *See* Dkt. No. 122 at 19.

The declarations Defendant submits show that there are meaningful differences in CTLs management responsibilities.  *See* Dkt. No. 111 at 31.  For example, Vanessa Baird, a CTL at the New Hartford, New York store, declared that she works fifty hours a week, opens and closes the store, oversees hiring, managing supervisors, and handling customer and employee complaints. *See* Dkt. No. 116-4 at 1:2-4, 5:26.  She stated that she has "final say on who gets hired" and is "primarily responsible for all hiring decisions." *Id.* at 2:9, 2:11.  By contrast, Sherry Hopper, an STL and former CTL at the Kingston, New York store, declared that while she has been working as a STL, the CTL she works with conducts the first interview, she conducts the second interview, and then she and the CTL discuss whether "the applicant is a good fit for the store[.]" *Id.* at 75:2, 75:8.  Baird also stated that she performs the same work as hourly workers, including "cleaning, sweeping, stocking shelves, and helping out with the cash register," but that she does "more planning, strategizing, merchandising, focusing on what needs to be done to hit [the store's] sale goals, and executing plans." *Id.* at 4:24.  Baird described the "three-step disciplinary process," where she gives a verbal warning, and if she does not see a significant improvement, then does "a write up" which is submitted to Human Resources after the person being disciplined signs the warning. *Id.* at 3:17-4:19.  If the behavior continues, then the employee's employment is terminated. *See id.*

Tori Barbaglia, a CTL at the Oswego, New York store, declared that she works fifty-to-sixty hours a week, opens and closes the store, makes hiring decisions and recommends associates for promotions, and is responsible for the store's operations, including overseeing the merchandise and freight. *See id.* at 6:1-6. In contrast to Baird, Barbaglia stated that she has "the authority to discipline associates" but that when she does "write ups for performance [she] usually need[s] to have HR approve it first." *Id.* at 6:12. Barbaglia stated that the DTL sends a budget once a week, the STL writes the team leader schedule for the month, and that she uses that "as a guide to write everyone else's schedule." *Id.* at 8:14. Barbaglia declared that she performs some of the same tasks as the hourly employees, including assisting with freight, stocking shelves, and working the cash register, but unlike an hourly employee, she has "very limited supervision," and "ninety percent of [her] day consit[s] of supervising [her] team." *Id.* at 8:17-18.

Rebecca Carlsson declared that she worked as a CTL at Ollie's store in Greece, New York, for approximately three years before she transferred to the Webster, New York store, where she continues to work as a CTL. *See id.* at 31:2. Carlsson stated that the "duties [she] handled as a CTL varied greatly depending on the STL," because some STLs required her "to handle almost all of the office responsibilities at the Store, while others handed many of those responsibilities on their own." *Id.* at 31:3. At the Webster store she collaborates "on most decisions relating to operation of the Store" with the STL, and works with him to handle the interviews. *Id.*; *see also id.* at 32:5. Carlsson stated that she has "sole responsibility for creating both the employee and manager schedules for the Store." *Id.* at 33:10. On the other hand, Nicole Moore, an STL and former CTL at the Hudson, New York store, declared that the STL handles scheduling for the STL, CTL, FFS, and ATL positions at the store. *See id.* at 120:10. Carlsson described her role in disciplining associates as verbally counseling them when they are not meeting expectations,

issuing written warnings "relating to attendance," being "involved in termination meetings with

the Loss Prevention Manager and/or the STL," and filing the paperwork to terminate employees

for no show terminations. *Id.* at 33:9.

Francine Jaeschke, a CTL at the Middletown, New York store, declared that her "primary

job duties include overseeing merchandising, making sure the floor looks good, and ensuring the

Associates are being productive" and that she works "hand-in-hand with [her] [STL] to make sure

the Store is running smoothly." *Id.* at 80:5. Jaeschke stated that she leads a daily huddle to go

over sales and operations for the day. *See id.* at 81:9. She coaches associates if they are not

meeting expectations and has previously written-up associates for attendance issues, but her

involvement with hiring, firing, and interviewing was much more limited when she worked with

some STLs than others. *See id.* at 81:10-11, 83:21. She also stated that she "occasionally stock[s]

shelves or work[s] the register to help out," but those tasks take less than twenty percent of her

day. *Id.* at 83:19.

Allen LaClair, a CTL at the Massena, New York, store, declared that his "primary job

duties are overseeing the operations of freight processing, merchandising decisions, scheduling

and hiring, and HR-oriented tasks." *Id.* at 90:4. Tina Ules, a CTL at the Greece, New York store,

stated that department supervisors are responsible for merchandising decisions, such as how to

arrange merchandise and product placement. *See id.* at 185:11. LaClair stated that he would

interview applicants before the STL conducted a second interview, and the STL has so far made

hiring decisions in accordance with his recommendations. *See id.* at 90:5. LaClair also stated that

he is "responsible for supervising the associates in the store," including by formulating and

communicating a freight plan, and walking around the store to check on associates. *Id.* at 91:8-9.

He submits the schedule for non-managerial positions to the STL for final approval, is "in charge

of the overall store's layout," "overseeing the freight process," and "opening and closing the store." *Id.* at 93:12-13, 94:15, 95:18.  He declared that he generally works forty-five hours a week. *See id.* at 96:23.

The declarations Defendant submitted from CTLs and STLs at New York stores show that potential members who could choose to opt-in to the proposed class have different processes for, and levels of involvement in, hiring, interviewing, disciplining and terminating associates, as well as discrepancies in their level of autonomy and supervision from the STL and how much time is spent assisting with the cash-register, moving freight, shelving, and other tasks primarily assigned to the hourly employees, merchandising, scheduling, and varying average weekly hours.  Plaintiff, the proposed opt-in Plaintiff, Plaintiff's declarant Colette Forjone, and Defendant's job description for CTLs also present different accounts of the level of management CTLs have.

Even without considering the declarations Defendant submits, there are meaningful differences between Plaintiff's testimony, proposed opt-in Plaintiff Swain's testimony, Plaintiff's declaration from Colette Forjone, and the advertised description of the CTL position, that would require the Court to conduct individualized inquiries to determine whether the exemption provisions would apply.  Accordingly, the Court finds that Plaintiff has failed to show that his state law claims share common facts with, or arise from the same course of events as, the claims of each putative class member.  Rather, the record before the Court strongly suggests that resolution of the issue whether Plaintiff or any Ollie's CTLs in New York State were ever entitled to overtime wages under the NYLL would necessarily entail an analysis of each CTL's individual job experiences to determine his or her qualification for exempt status.

Having found that Plaintiff has failed to satisfy the commonality prerequisite of Rule 23(a)(2) and (3), the Court need not consider whether the remaining requirements of Rule 23 have been met.

## IV. CONCLUSION

Accordingly, after carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for class certification pursuant to FED. R. CIV. P. 23 (Dkt. No. 100-1) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  August 30, 2024
       Albany, New York

Mae A. D'Agostino
U.S. District Judge

22